Bergan, J.
Defendant has been sentenced in Queens County to a maximum of 40 years for robbery first degree, manslaughter *105 second degree and felonious possession of weapons and instruments. Proof was adequate that defendant and a companion held up a taxi driver and rohhed him and that, after the robbery was completed and while the taxi driver was sitting in the cab offering no resistance, this defendant opened the door of the cab, shot and killed the driver. The crime was established both by defendant’s confessions and by the testimony of Kenneth Fulmore, an accomplice. The sufficiency of the evidence to establish defendant’s guilt quite beyond a reasonable doubt is not raised on this appeal.
The main questions raised turn on the effect and relationship of successive admissions elicited from defendant while in custody, the first by police after his arrest; the second a “ dry run ” or preliminary oral examination made by an Assistant District Attorney, not recorded, and the third an examination of defendant by the Assistant District Attorney recorded and transcribed in questions and answers.
The first admissions to the police were suppressed on consent of the People in the Huntley hearing by the hearing Judge because of the failure to give adequate Miranda warnings; but the court did not suppress the admissions made to the Assistant District Attorney which defendant conceded at the hearing were preceded by warnings, and these admissions in both the preliminary examination and the recorded examination were admitted on the trial.
Appellant argues that the suppressed admissions were so related to the subsequent ones that they “ tainted ” them and made them inadmissible; that he did not receive sufficient notice from the People that the “ dry run ” or “ exploratory ” unrecorded examination by the Assistant District Attorney would be offered on the trial; and that, in any event, the “ exploratory ’ ’ examination was inadmissible because some of it did not appear in the more formal and reliable transcribed statement.
A man who makes admissions under duress or in violation of his constitutional right to warning and advice may feel so committed by what he has then said that he believes it futile to assert his rights after he has been later advised of them before new questioning begins. This state of mind may have an effect *106 on the waiver leading to the later admissions; or on the voluntary nature of those admissions.
An interrelationship between statements was one of the grounds leading to the decision in United States ex rel. Stephen J. B. v. Shelly (430 F. 2d 215) which sustained a Federal habeas corpus order after this court had affirmed the conviction (People v. Stephen J. B., 23 N Y 2d 611). The Federal court found the admission of the petitioner there, a 16-year-old boy, was not based on an intelligent waiver, and one factor, not apparently the controlling one, was the finding by the Federal court that having made a prior statement improperly elicited this let ‘1 the cat out of the bag” and affected his subsequent statement (430 F. 2d, p. 219).
Other reasons, however, among them the youth and inexperience of the petitioner, affecting ability to make a meaningful waiver, entered into the grounds laid down in the decision to which one Judge dissented and another agreed only to a footnote to the opinion (p. 219).
Whether an accused believes himself so committed by a prior statement that he feels bound to make another, depends on his state of mind which is a fact question. Appellant testified at the Huntley hearing. He did not say that his prior statement had any effect on his later statement to the Assistant District Attorney.
He testified he was then advised of his right to a lawyer but did not ask for one and made the subsequent statement because “I was scared ”. He continued to be afraid because the policeman had previously “ promised to kill me ”.
The hearing Judge held the testimony of appellant incredible and found the statement had been voluntarily made. Although counsel for. appellant raised the question before the hearing Judge that the subsequent statement was “tainted” by the earlier ones, no factual basis for this appears in the record, not even the defendant’s own expression of his state of mind. Nor did counsel state the “ cat-out-of-the-bag ” theory to be a ground of “ taint ”. The court, accordingly, was justified in holding the statement made to the Assistant District Attorney admissible.
The court does not reach on this record, therefore, and need not now decide, whether on a factual finding of association *107 between an earlier invalid admission and a later one, validly safeguarded, there must be suppression. The decisions in People v. Stephen J. B. (23 N Y 2d 611, supra), Commonwealth v. White (353 Mass. 409, cert. den. 391 U. S. 968) and Lyons v. Oklahoma (322 U. S. 596) seem to sustain admission of the statements taken by the Assistant District Attorney.
As to notice that the “ exploratory ” or “ dry run ” examination by the Assistant District Attorney would be offered on the trial, as well as the recorded statements, defendant received fully adequate notice. The People gave notice pursuant to the former Code of Criminal Procedure (§ 813-f) that they intended to offer statements attributed to defendant.
At the Huntley hearing there was extensive testimony as to the warnings given by the Assistant District Attorney before any admissions were made. Defendant inquired fully into this examination. Thus defendant was advised of the nature of this preliminary questioning and of its circumstances and had adequate notice that his admissions would be offered at the trial.
At the end of the Huntley hearing the hearing Judge ruled not only that defendant had been given Miranda warnings by the Assistant District Attorney, but that the statement given, later “ reduced to writing ”, was voluntary and admissible. Defendant’s counsel could not reasonably believe that this preliminary statement would not be offered on the trial. He was not left uninformed on this. Thus People v. Remaley (26 N Y 2d 427) does not support appellant’s argument.
Nor was there any such inconsistency between the dry-run exploratory statement and the question and answer statement as to require its suppression because it does not “ appear ” in the latter. The Assistant District Attorney testified on cross-examination that the two statements correspond factually “ in substance ”.
Appellant complains also about the charge to the jury on ‘ ‘ specific intent ’ ’ to commit robbery. The main charge covered the essential elements of robbery, especially where, as here, it was charged two men acted together in a conspiracy to rob. Among other things, the Judge said that a conspiracy may be an agreement to do an unlawful act, motivated ‘ ‘ by criminal intent”.
*108 The purpose and intent to rob were elsewhere adequately explained to the jury and the People point out that section 160.15 of the Penal Law, defining robbery in the first degree, does not require a specific intent. A robbery such as this could scarcely happen without a purpose to commit it.
The maximum sentence imposed of 40 years was made up of 25 years for robbery and 15 years for manslaughter to run consecutively. This was permissible within section 70.25 of the Penal Law. The robbery and homicide were not a “ single act ’ ’. They were successive separate acts under the record here, where the shooting of the victim appears as an unnecessary afterthought (People ex rel. Maurer v. Jackson, 2 N Y 2d 259).
The order should be affirmed.
Chief Judge Fuld and Judges Burke, Scileppi, Breitel, Jasen and Gibson concur.
Order affirmed.