**Carlson TANNER, Jr., Petitioner-Appellant,**

v.

**Leon VINCENT, Warden of Green Haven Prison, Stormville, New York, Respondent-Appellee.**

**No. 965, Docket 76–2010.**

United States Court of Appeals, Second Circuit.

Argued April 21, 1976.
Decided Aug. 27, 1976.

G. Clark Cummings, New York City (William J. Gallagher, The Legal Aid Society, New York City, on the brief, William E. Hellerstein, New York City, of counsel), for petitioner-appellant.

**933**

Joan P. Scannell, Deputy Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen., New York City, of the State of New York, on the brief, Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, of counsel), for respondent-appellee.

Before FRIENDLY, HAYS and MESKILL, Circuit Judges.

HAYS, Circuit Judge:

On March 15, 1968 George Blum, a New York City taxi driver, was shot and killed in Queens County, New York during the course of a robbery in his cab. Later the same day appellant was arrested in his apartment at the Hotel Holland in Manhattan by three detectives of the New York City Police Department and questioned about his participation in this crime after first being given certain warnings in attempted compliance with *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The interrogation continued as appellant was driven in a police car to the precinct station house and while he was in custody there. During this time he made several incriminating statements concerning the robbery and homicide.

That afternoon, approximately three hours after the arrest at the hotel, Anthony Lombardino, an Assistant District Attorney for Queens County arrived at the station house to interrogate Tanner and obtain a recorded statement. In response to Lombardino's questioning which followed what petitioner-appellant concedes were complete *Miranda* warnings, Tanner admitted his presence at the scene of the crime but claimed that the robbery and shooting was the deed of his companion Kenneth Fulmore. This statement was in all material respects the same statement made earlier by Tanner to the detectives who brought him into custody.

In accordance with *People v. Huntley,* 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965), the state trial judge held a separate hearing prior to Tanner's trial on the issue of the admissibility of the inculpatory statements made by the defendant. *See Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12

L.Ed.2d 908 (1964). After hearing testimony of two of the arresting detectives, Assistant District Attorney Lombardino, and the defendant Tanner, the *Huntley* hearing judge held that all statements made by Tanner prior to his questioning by Assistant District Attorney Lombardino at the station house were inadmissible at trial because they had been preceded by an incomplete *Miranda* warning.[1] The inculpatory statements which Tanner made to the Assistant District Attorney were held to be admissible however. The *Huntley* court found that the warnings given Tanner prior to his interrogation by the Assistant District Attorney were in full compliance with the *Miranda* decision. The court also rejected as incredible Tanner's claim that threats of violence and actual physical force were exerted upon him at various times during custody by the arresting detectives prior to his statement to Lombardino. Taking into consideration all the surrounding circumstances the Court held that Tanner's statements to the Assistant District Attorney were voluntarily made.[2]

After a jury trial in the New York State Supreme Court, Queens County at which the inculpatory statement was admitted into evidence, appellant was convicted on April 10, 1969 of manslaughter second degree, robbery first degree, and felonious possession of a weapon. He was sentenced to a maximum of forty years imprisonment. The conviction was affirmed without opinion by the Appellate Division, Second Department on February 1, 1971. *People v. Tanner,* 36 A.D.2d 690, 319 N.Y.S.2d 406. In an unanimous opinion the New York Court of Appeals affirmed. *People v. Tanner,* 30 N.Y.2d 102, 331 N.Y.S.2d 1, 282 N.E.2d 98 (1972). On May 9, 1975 Tanner filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of New York which was denied by the Court in a Memorandum and Order filed on November 6, 1975. From this order petitioner appeals. We affirm.

## I

Appellant contends that his conviction may not stand because his statement to the Assistant District Attorney was involuntarily made and therefore its admission into evidence at trial violated appellant's Fifth and Fourteenth Amendment privilege against self-incrimination. *See Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d

---

1. Specifically the *Huntley* court found that at the time of arrest the detective advised Tanner that he had the right to remain silent; that any statements he made could be used against him in criminal proceedings; that he had a right to an attorney at every stage of the proceedings and that if he could not afford to hire a lawyer there would be one appointed for him. However the Court held these warnings were insufficient to apprise the defendant of his right to be represented by a lawyer during the interrogation at his apartment immediately subsequent to his arrest. We will assume, as the *Huntley* hearing court held, that the initial warnings were inadequate. By that assumption, we do not mean to suggest agreement with the state court's conclusion; indeed, recent cases in this Circuit indicate that the warnings were adequate. *See United States v. Floyd,* 496 F.2d 982 (2d Cir. 1974), *cert. denied,* 419 U.S. 1069, 95 S.Ct. 654, 42 L.Ed.2d 664 (1975); *Massimo v. United States,* 463 F.2d 1171 (2d Cir. 1972), *cert. denied,* 409 U.S. 1117, 93 S.Ct. 920, 34 L.Ed.2d 700 (1973); *United States v. Lamia,* 429 F.2d 373 (2d Cir.), *cert. denied,* 400 U.S. 907, 91 S.Ct. 150, 27 L.Ed.2d 146 (1970).

2. "I find that beyond a reasonable doubt the testimony of the defendant is totally beyond belief and herewith decree that at no time during the foregoing interrogations, nor precedent thereto, were threats or any physical force exerted upon the defendant.

   "I further find to that same degree that at no time during the taking of the statement by Mr. Lombardino was any promise made by anyone, either as a law enforcement officer or as a representative of the District Attorney's Office, to this defendant to induce him to make any inculpatory statements.

   "Also I find to the same degree of proof that at no time did the defendant ever request that an attorney be present nor that one be assigned to him, this after having been advised of those rights by the assistant district attorney Lombardino.

   "Six. I therefore conclude as a matter of law that the foregoing inculpatory statement alluded to herein [*i. e.,* the statement made to Lombardino] was voluntary." Transcript of *Huntley* hearing at 125–26.

653 (1964). Appellant's involuntariness claim is based on the fact that the warning given to him by the detective at the time of his arrest was found by the state court judge at the *Huntley* hearing to have not been in full compliance with *Miranda*. For this reason his statements to the police officials were suppressed. Appellant claims that the statement which he subsequently made to Assistant District Attorney Lombardino who, he concedes, properly informed him of his constitutional rights was tainted by the earlier deprivation of his rights under *Miranda* because Lombardino knew the results of the initial interrogations and had informed Tanner of this knowledge before questioning him. Under these circumstances, argues appellant, a suspect in custody would regard the new *Miranda* warnings as meaningless and see no reason at that point to remain silent or request a lawyer's assistance since "the cat would be out of the bag."

Appellant relies on our decision in *United States ex rel. Stephen J. B. v. Shelly,* 430 F.2d 215 (2d Cir. 1970) as authority for the proposition that his statement to Lombardino was involuntary simply because it had been preceded by statements later held inadmissible due to an inadequate *Miranda* warning. *Stephen J. B.* does not support this position. In that case the defendant,

Stephen, was a sixteen year old boy whose friend's parents had put him and his companion out of their car on a public road miles from his home because of their annoyance at the boys' intoxicated conditions. The two then stole a parked car and were later apprehended in it by the police. Stephen attempted to escape but was forcibly returned to the patrol car by the officer. He was then given an incomplete *Miranda* warning and he immediately admitted that the car was stolen; he again confessed to another officer who arrived to assist. After being taken to the station house he was given full *Miranda* warnings and he again confessed. At the *Huntley* hearing the police testified that "he looked as though he had slept in his clothes, seemed tired, and cried in the station house." *United States ex rel. Stephen J. B. v. Shelly, supra* at 217.

The district court granted the petitioner's application for a writ of habeas corpus since in its view the totality of the circumstances surrounding the boy's confession including the factors of his youth and lack of prior experience with police officials indicated the ineffectiveness of the later waiver.[3] This Court held that it had no reason to upset the district court's conclusion given the failure of either party to raise the issue of the deference statutorily required to be given by a federal district court under 28 U.S.C. § 2254(d)[4] to a determination of

---

**3.** "In view of the circumstances presented in this case—a tired, frightened, 16-year old boy never before in any trouble with authority, who had admitted the commission of a felony, and who within seconds thereafter, still in the absence of parents or mature friends, reiterated his statements after proper warnings—it is impossible to conclude that the waivers of the rights to silence and to counsel were either knowing or voluntary." 305 F.Supp. 55, 60 (E.D.N.Y.1969).

**4.** 28 U.S.C. § 2254(d) provides:

"(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indi-

cia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

voluntariness of a waiver by the state court in a *Jackson v. Denno* suppression hearing. *Assuming* "that the question of voluntary waiver [of *Miranda* rights] was open to the fullest scrutiny by the district judge" *United States ex rel. Stephen J. B. v. Shelly, supra* at 218 n.4, the divided panel held that the finding of involuntariness was supported by the uncontested facts found in the state court proceeding, among them the fact that the petitioner had initially confessed without being fully advised of his constitutional rights. Significantly however, the majority opinion, like that of the district court, relied on all the circumstances presented by the particular case in reaching its conclusion.

> "The 'cat-out-of-the-bag' theory is hardly the only evidence pointing to the absence of a legally sufficient waiver. Petitioner was 16 years of age at the time of the events described. He had never been in difficulty with the police before, but on this particular night he was recaptured after fleeing from a stolen car, virtually held up by the scruff of the neck, handcuffed and taken to the police station. Once there he was alone, deserted by his friend . . . , without any assistance from his parents or a lawyer. Testimony by police officers indicated that at the station house he looked tired and seemed to have slept in his clothes, and at one point even appeared to have been crying." 430 F.2d at 219 (emphasis supplied).

It was on the basis of *all* these relevant factors and an evaluation of their cumulative impact on the petitioner that the dis-

trict court's determination in *Stephen J. B.* was upheld.

■■■ In the instant case appellant in effect argues for the adoption of a *per se* rule which would require an automatic finding of involuntariness with respect to any statement made in custody by an individual fully informed of his constitutional rights if at some earlier time the individual had made inculpatory remarks without the benefit of complete *Miranda* warnings unless at the subsequent interrogation that individual is specifically informed that his earlier statements are inadmissible in any criminal proceedings that may be brought against him. Requiring such additional warnings would impose an undue burden in many cases including this one, where the defectiveness of the initial warnings was not at all apparent at the time of the second confession. *Compare United States v. Killough,* 114 U.S.App.D.C. 305, 315 F.2d 241, 250 (1962) (Wright, *J.,* concurring). And, of course, "[a] watered-down version of the warning, to the effect that the prior confession *may* be inadmissible, is obviously of little help." *Id.* at 251. Accordingly, we reject this mechanistic approach and adhere to the established rule that the voluntariness of any custodial statement must be determined from an examination of the totality of particular facts surrounding its making. *See, Clewis v. Texas,* 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967); *United States v. Bayer,* 331 U.S. 532, 539–41, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947); *United States v. Mullens,* 536 F.2d 997, 1000 (2d Cir. 1976); *Knott v. Howard,* 511 F.2d F.2d 1060 (1st Cir. 1975) (*per curiam*). *Cf., Schneckloth v. Bustamonte,* 412 U.S. 218,

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:

And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made,

unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous."

223–27, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Collins v. Brierly,* 492 F.2d 735 (3d Cir.) (*en banc*), *cert. denied,* 419 U.S. 877, 95 S.Ct. 140, 42 L.Ed.2d 116 (1974). Therefore, while it is true that Tanner had "let the cat out of the bag" *United States v. Bayer,* 331 U.S. *supra* at 540, 67 S.Ct. at 1398, in his initial admissions to the New York detectives, this was only one factor bearing on the disputed issue of the voluntariness of the later, fully advised statement. As this Court stated previously in a similar context, the fact "that the admission was once made should not, in itself, always be fatal." *United States v. Knight,* 395 F.2d 971, 975 (2d Cir. 1968), *cert. denied,* 395 U.S. 930, 89 S.Ct. 1776, 23 L.Ed.2d 249 (1969). *See, also Myers v. Frye,* 401 F.2d 18 (7th Cir. 1968).[5]

At the *Huntley* hearing the state court made factual findings regarding the totality of the circumstances surrounding the defendant's several statements to the various state officials. It held that Tanner's inculpatory statement to the Assistant District Attorney was made voluntarily.[6] Its decision was unanimously affirmed by the New York Appellate Division and the Court of Appeals. In this federal collateral proceeding the findings of the state court are presumptively correct pursuant to 28 U.S.C. § 2254(d). *See, LaVallee v. Delle Rose,* 410 U.S. 690, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973) (*per curiam*); *Winford v. Swenson,* 517 F.2d 1114, 1118 (8th Cir. 1975); *United States ex rel. Sabella v. Follette,* 432 F.2d 572 (2d Cir. 1970), *cert. denied,* 401

U.S. 920, 91 S.Ct. 905, 27 L.Ed.2d 822 (1971). Since petitioner-appellant fails to establish, nor does it appear, that the evidentiary hearing afforded him in the state court on his involuntariness claim was deficient in any respect described in the seven exceptions to Section 2254(d), and because we find upon review that the record of the *Huntley* hearing fairly supports the state court's determination on this issue, Tanner bears the burden of establishing by convincing evidence that the findings of fact by the state court are erroneous. Appellant fails to do so since he does not contest the factual findings of the *Huntley* court but rather relies exclusively upon a *per se* doctrine of involuntariness which we reject. Therefore we uphold the state court's finding of voluntariness with respect to the defendant's statement admitted at trial. *See, United States ex rel. Lewis v. Henderson,* 520 F.2d 896, 903–04 (2d Cir.), *cert. denied,* 423 U.S. 998, 96 S.Ct. 429, 46 L.Ed.2d 373 (1974); *Whitaker v. Estelle,* 509 F.2d 194, 197 (5th Cir.), *cert. denied,* 423 U.S. 872, 96 S.Ct. 140, 46 L.Ed.2d 103 (1975); *Wright v. North Carolina,* 483 F.2d 405 (4th Cir. 1973), *cert. denied,* 415 U.S. 936, 94 S.Ct. 1452, 39 L.Ed.2d 494 (1974); *United States ex rel. Johnson v. Dept. of Correctional Services,* 461 F.2d 956 (2d Cir. 1972).

## II

Appellant contends that the *Huntley* hearing failed to determine the voluntariness of all of his statements to the Assist-

---

5. Since, as the state appellate courts and the district court found Tanner's second confession was in no way causally related to the first, we need not consider whether on different facts the exclusion of a second confession might be required in order to deter avoidance of *Miranda* in obtaining the first. *See Michigan v. Tucker,* 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974). In addition, since any defect in the initial warnings was apparently inadvertent, this would be an exceedingly inappropriate case for adopting the proposed rationale.

6. Under New York law the judge at the *Huntley* hearing must find voluntariness beyond a reasonable doubt. *People v. Huntley,* 15 N.Y.2d 72, 78, 255 N.Y.S.2d 838, 843, 204

N.E.2d 179. This is a higher standard than that constitutionally required. *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972) (finding of voluntariness by preponderance of the evidence upheld). Moreover, in New York after the judge has determined that the statement was voluntarily made, the defendant is given an additional opportunity to challenge its voluntariness before the jury. *People v. Huntley, supra,* 15 N.Y.2d at 78, 255 N.Y.S.2d at 843. This procedure, providing a second State factfinder on the voluntariness question, also is more favorable to criminal defendants than that constitutionally mandated. *Lego v. Twomey, supra,* 407 U.S. at 489, 92 S.Ct. 619.

ant District Attorney which later were admitted at trial thereby depriving him of due process as established in *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). This argument apparently is based on the fact that not all of Tanner's interrogation by Lombardino was recorded. After fully advising the appellant of his constitutional rights the Assistant District Attorney conducted an exploratory interrogation to familiarize himself with the case. A stenographer was then brought in and Tanner's account of his participation in the robbing and killing of Blum was formally transcribed. Tanner now claims that at the *Huntley* hearing the prosecution indicated that at trial it would only offer the recorded statement but at trial it offered testimony concerning the unrecorded exploratory interrogation which had gone unchallenged at the *Huntley* hearing. This argument is without merit. The state court ruled on the voluntariness of all of Tanner's custodial statements at the *Huntley* hearing. It is uncontested that Tanner received full *Miranda* warnings prior to *any* questioning by the Assistant District Attorney.[7] The fact that only part of the interrogation was transcribed has no bearing on the issue of voluntariness which was fully litigated at the *Huntley* hearing.

The order of the district court is affirmed.

---

7. To the extent that petitioner also challenges the effectiveness of his express waiver following the warnings given by Assistant District Attorney Lombardino, the same analysis and conclusion apply. The fact that petitioner had confessed earlier after assumedly inadequate warnings does not *per se* invalidate his subsequent waiver. Accordingly, we agree with the state court's implicit determination that the waiver was valid and the confession therefore admissible under *Miranda.*