**Frederic D. JENNINGS, Petitioner,**

v.

**J. Leland CASSCLES, Superintendent of Great Meadow Correctional Facility, Comstock, New York, Respondent.**

**No. 75–C–1630.**

United States District Court, E. D. New York.

Nov. 8, 1976.

Lanny Earl Walter, Albany, N.Y., for petitioner Jennings.

Louis J. Lefkowitz, Atty. Gen. of N.Y., by Rhonda Amkraut Bayer, Deputy Asst. Atty. Gen., New York City, for respondent.

## MEMORANDUM AND ORDER

COSTANTINO, District Judge.

On August 21, 1970, Schyler Edgar Carman discovered a badly decomposed body in a wooded area near his home. Through the use of dental records and items of clothing and jewelry found with the remains, the deceased was identified as Mary Eloise Carman, Mr. Carman's daughter. The cause of death was tentatively determined to be manual strangulation following a sexual attack.

At the time the deceased was discovered, petitioner was incarcerated in Suffolk County jail in New York awaiting trial on two separate rape charges, for which he was subsequently convicted and for which he is presently incarcerated. Because of certain similarities surrounding the death of Mary Eloise Carman and the two attacks with which petitioner was charged, police detectives requested petitioner's permission to speak to him. Petitioner signed the requisite permission slip and was questioned in jail on August 26, 1970 from 10:40 a. m. to 11:30 a. m. and again from 1:05 p. m. until 4:30 p. m., a period of some four hours and fifteen minutes. During neither period of questioning did the police advise petitioner of his rights or attempt to identify and locate his attorney.

During the morning session, police questioned petitioner generally about his family, sexual problems, and the other charges then pending against him. During the afternoon session, however, petitioner revealed certain information about the death of Mary Eloise Carman, including numerous details not known to the general public. Petitioner explained his knowledge of the murder by saying that a "friend" had committed the crime and then had shown him the body. He also offered an alibi for the night the crime was committed and explained that his failure to report the crime was due to his fear of being implicated, since he had previously been arrested on rape charges.

The police left petitioner and during the evening of August 26th checked out the alibi and the story that he had given. The alibi witness denied being with petitioner on the night in question and the police were unable to confirm the existence of petitioner's "friend."

On August 27th, the police detectives returned to the Suffolk County jail and interrogated petitioner for almost two hours. Petitioner again signed a permission slip and on this occasion he was advised of his rights prior to questioning. The police had petitioner repeat the story he had told the day before and they then pointed out inconsistencies and inaccuracies in the story. Finally, they informed him that his story had not checked out and that they believed that he had committed the murder. Petitioner finally confessed to the murder of Mary Eloise Carman.

At a pretrial suppression hearing, petitioner's statements of August 26th were suppressed because of the failure of the police to give him his rights on that day. His confession, however, was adjudged to have been given voluntarily and was admitted into evidence against him. Petitioner was convicted of the crime of murder and sentenced to serve a term of 25 years to life. His conviction was unanimously affirmed by the Appellate Division, *People v. Jennings*, 40 A.D.2d 357, 340 N.Y.S.2d 25 (2d Dep't, 1973), and the Court of Appeals, 33 N.Y.2d 880, 352 N.Y.S.2d 444, 307 N.E.2d 561 (1973). Petitioner then filed a pro se petition for a writ of habeas corpus with this court alleging (1) that his confession was the direct result of the illegally obtained statements of August 26, and that as such it was "fruit of the poisonous tree" and should not have been admitted, and (2) that there was a failure of proof to sustain a finding that the crime charged had been committed. The petition was denied by order of August 14, 1974. Petitioner, with benefit of legal counsel, has now filed this

second petition for a writ of habeas corpus alleging (1) that his confession was involuntary and (2) that the confession was "fruit of the poisonous tree."

As a threshold question, this court must determine whether this petition should be entertained in light of the previous application for the same relief. Section 2244(b) of Title 28 of the United States Code provides in essence that where a petition for a writ of habeas corpus has been denied, a subsequent petition for the writ "need not" be heard unless the second application raises some ground not raised in the prior application. It is clear, in comparing petitioner's two petitions, that the second petition raises no issues not raised in the first petition. However, since the first petition was submitted pro se, and since pro se applications and pleadings are to be liberally construed, *see, e. g., Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), it is concluded that the interests of justice would best be served by not precluding review of the arguments raised in the present petition.

Petitioner raises two grounds for overturning his conviction. He contends (1) that notwithstanding the giving of the full *Miranda* warnings (*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)) on the second day prior to the conversations which led to his confession, his statements of the first day so overbore his mind on the second day as to render the confession involuntary; and (2) that the confession should have been suppressed as "fruit" of the illegally obtained statements of the first day. Since each of the contentions is without merit, the petition is denied.

With respect to the first contention, it must be determined at the outset whether petitioner is entitled to federal habeas corpus review of the state court's finding as to the voluntariness of the confession.

The Supreme Court has indicated that the proper forum in which to decide the voluntariness of a state defendant's confession is the state courts, and that absent some basic constitutional defect in either the procedure utilized or the standard applied to determine voluntariness, the state court finding is final. *Rogers v. Richmond*, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1966). Moreover, 28 U.S.C. § 2254(d) mandates that the federal courts give deference to the determination of the state courts on the voluntariness issue. *See Tanner v. Vincent*, 541 F.2d 932 (2d Cir., 1976).

It has been the law in this circuit for many years that the trial judge's decision as to the voluntariness of a confession is final and will not be disturbed unless it is clearly erroneous. *See, e. g., United States v. Boston*, 508 F.2d 1171 (2d Cir., 1974); *United States v. Gottfried*, 165 F.2d 360 (2d Cir., 1948), *cert. denied*, 333 U.S. 860, 68 S.Ct. 738, 92 L.Ed. 1139 (1948). While *Boston* and *Gottfried* involved defendants who had been convicted in federal court and were seeking appellate court review of the district court's voluntariness determination, the rule enunciated there as to the finality of the trial judge's finding should, in light of *Rogers v. Richmond, supra,* apply as well to situations in which those convicted in state court seek federal habeas corpus review of the voluntariness determination. In this case, petitioner was afforded a full and fair opportunity to contest the voluntariness of his confession in the state trial court, in accordance with *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) and *People v. Huntley*, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965). The facts as to what transpired during the two days of questioning are not in dispute, so no new evidentiary hearing is required. *See Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Petitioner has alleged no irregularities or defects in the Huntley hearing or in the constitutional standard applied by the trial judge in determining that the confession was voluntary. Rather, he seeks a declaration by this court that the state court simply determined the issue incorrectly. Even if it were proper for this court to review the state court's finding as to voluntariness in this case, that finding would not be disturbed.

In *United States v. Pomares*, 499 F.2d 1220 (2d Cir., 1974), *cert. denied*, 419 U.S. 1032, 95 S.Ct. 514, 42 L.Ed.2d 307 (1974), the test of the voluntariness of a confession was set forth as follows:

> whether an examination of *all the circumstances* discloses that the conduct of law enforcement officials was such as to *overbear* [the defendant's] will to resist and bring about confessions not freely self-determined. (emphasis added)

*See also Rogers v. Richmond, supra; United States v. Ferrara*, 377 F.2d 16, 17 (2d Cir.), *cert. denied*, 389 U.S. 908, 88 S.Ct. 225, 19 L.Ed.2d 225 (1967).

■ In this case, there is no evidence of any physical abuse of the defendant. Nor is there evidence of the type of mental or psychological coercion which has rendered confessions involuntary in other cases. *See, e. g., Clewis v. Texas*, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967); *Gallegos v. Colorado*, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962). Indeed, there was far less pressure on the defendant to speak in this case than in other cases in which the confessions were held to be voluntary. *See, e. g., United States v. Pomares, supra; United States v. Ferrara, supra*. Assuming, without deciding, that petitioner may have "let the cat out of the bag," *see United States v. Bayer*, 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947), by his statements of the first day, those statements created no psychological pressure on petitioner to confess, since he believed that the statements protected him. *See United States v. Knight*, 395 F.2d 971 (2d Cir., 1968), *cert. denied*, 395 U.S. 930, 89 S.Ct. 1776, 23 L.Ed.2d 249 (1969). In this case, as in *Knight*, the careful giving of the *Miranda* warnings was sufficient to remedy the prior constitutional violation.

■ There has been no showing here that the state voluntariness hearing was in any way deficient, as specified in 28 U.S.C. § 2254(d). In addition, the record of the *Huntley* hearing fairly supports the state court's determination of the voluntariness issue. Therefore, the petitioner bears the burden of establishing by convincing evidence that the findings of fact made by the state court at the *Huntley* hearing were erroneous. *Tanner v. Vincent, supra*. He has failed to carry that burden, in that he has not contested the correctness of those factual findings, and thus here, as in *Tanner*, the state court's determination as to voluntariness must be upheld. Petitioner's first contention is therefore without merit.

Petitioner's second argument is likewise unpersuasive. While it is true that *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), held that verbal evidence could be "fruit of the poisonous tree," that fact alone is not dispositive of the issue in this case. *Wong Sun* dealt with the question of whether oral statements obtained in the wake of a *Fourth Amendment* violation could be regarded as "fruit" of that violation. "Protection of the Fifth Amendment right against self-incrimination was not the Court's paramount concern [in *Wong Sun*]." *Brown v. Illinois*, 422 U.S. 590, 597, 95 S.Ct. 2254, 2259, 45 L.Ed.2d 416 (1975).

Petitioner's reliance on *Brown v. Illinois, supra*, is likewise misplaced. In *Brown*, the defendant was arrested without probable cause; subsequently he made two in-custody inculpatory statements after he had been given the *Miranda* warnings. The question to be decided in *Brown* was whether the giving of the *Miranda* warnings was sufficient to purge the taint of the Fourth Amendment violation so as to render the otherwise excludable statements admissible. The Supreme Court held that it was not, but was careful to limit its holding to the proposition that the *Miranda* warnings, by themselves, do not necessarily purge the taint of an illegal arrest. 422 U.S. at 605, 95 S.Ct. 2254.

■ In essence, petitioner is asking this court to apply the principles of the Fourth Amendment exclusionary rule to a case involving no Fourth Amendment violation. While the Supreme Court stated, in *Michigan v. Tucker*, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974) that "in a proper case" the rule would seem applicable to the Fifth Amendment context as well, it is not

necessary for this court to determine if this case is a "proper" one for application of the rule. Assuming, *arguendo*, that the "fruit of the poisonous tree" doctrine was applicable to the facts of this case, the petitioner's voluntary repetition of his first day's statements, after being given the *Miranda* warnings on the second day, constituted an intervening act of free will sufficient to purge the primary taint so as to render the confession admissible.

Since the petitioner's confession was neither involuntary nor the fruit of the poisonous tree, the petition is denied. So ordered.