Wachtler, J.
After a jury trial, the defendant, George Woods, was found guilty of robbery in the second degree (Penal Law, § 160.10) and sentenced to an indeterminate term of imprisonment with a maximum of 10 years. The Appellate *280 Division affirmed the judgment of conviction. On this appeal, the defendant argues that the evidence introduced by the People at trial was insufficient to support the jury’s verdict.
At approximately 10:45 a.m. on August 2, 1972, Miriam Ukiwe, the complainant, a nurse who had been living in this country for about two years, was walking along Clinton Street in Brooklyn. As she reached the corner of Clinton Street and Amity Street she was approached by a man with a brown envelope in his hand. He claimed to have just found the envelope in a nearby telephone booth and that he wanted to return it to its owner, but he was unable to read the name scrawled across the front of the envelope. He asked the complainant for assistance, but she too was unable to read the name. At this point, another man, subsequently identified as the defendant, joined them and attempted to aid them. When he failed to make out the name on the envelope, Ms. Ukiwe suggested that he look inside to see if there was any other identification. The defendant opened the envelope, looked inside and proclaimed that it contained $20,000 in cash. Ms. Ukiwe opined that the money was probably counterfeit and suggested that they turn it over to the police.
At this point the defendant "nudged” the complainant on the elbow and told her that she had to give them $2,500 to insure that she would not tell anyone and "for [her] own safety.” He also offered to share the found money with her, but she declined his offer. When she told him she did not have that much money with her, he suggested that she go home to get her bankbook. The defendant then escorted her home and entered her apartment and waited for her while she retrieved her bankbook. He then walked with her to the bank and waited for her to withdraw the funds, staying by her side throughout the entire transaction.
The complainant and defendant then left the bank together and were immediately joined by the man who had initially approached her. The two men then escorted her to their car, and, once inside, the defendant told her to give him the money and took it from her. They then allowed her to get out of the car and she walked home and immediately telephoned the police. Thereafter, on October 11, 1972 the defendant was arrested and subsequently identified by the victim at a police lineup.
George Woods was indicted for robbery in the second degree, grand larceny in the second degree, grand larceny in the third *281 degree and burglary in the third degree. At the conclusion of the People’s case, the court, on motion of the defense counsel, dismissed both larceny counts* and the burglary count but refused to dismiss the count charging the defendant with robbery. Subsequently, the jury found the defendant guilty of robbery in the second degree.
A person is guilty of robbery when "he uses or threatens the immediate use of physical force upon another person for the purpose of * * * [compelling the owner of such property * * * to deliver up the property * * *”. (Penal Law, § 160.00; see Clark & Marshall, A Treatise on the Law of Crimes, § 12.09 [7th ed]; La Fave & Scott, Criminal Law, § 94.) In the instant case, the defendant contends that the People have failed to make out a prima facie case of robbery in that they did not establish that he had threatened the complainant with the immediate use of physical force. The People, on the other hand, argue that the evidence was sufficient to support the jury’s verdict. The People are correct.
Under former law, it was robbery whenever a person obtained property by way of a threat of injury "immediate or future” (former Penal Law, § 2120; see People v Thompson, 198 NY 396). The present statute, however, requires that the threat be of the "immediate use of physical force” upon another person (Penal Law, § 160.00). The obtaining of property by means of a threatened physical injury in futuro is no longer robbery, but larceny by extortion (Penal Law, § 155.05, subd 2, par [e], cl [i]). Thus, in order to sustain a charge of robbery, the People must show not only the taking of the property, but that the taking was accomplished by means of the use or threatened immediate use of physical force. We feel that the People have met their burden in this case.
The complainant’s uncontradicted testimony at trial clearly indicates that the defendant and his companion had set out to perpetrate a "flim-flam” or confidence game on the complain *282 ant by claiming to have found a large sum of money and offering her a share of it if she would evince her good faith by giving them some of her own money. They encountered some unexpected resistance, however, when their victim, rather than willingly going along with their scheme, expressed some doubt as to whether the "found money” was genuine and suggested that they turn it over to the police.
The complainant’s testimony indicates, and the jury would be warranted in finding, that at this point the two men abandoned their more sophisticated attempt to obtain her money and took a new tack, for the defendant then "nudged [the complainant] on the elbow and said I have to come.” Thereafter, when she asked the defendant why she had to give him money, "he said it’s because to make sure that I wouldn’t tell anybody and for my own safety.” She further testified that when she told the defendant she did not have the money with her, he took her home and when she opened the door to her apartment "he pushed himself inside” and waited while she retrieved her bankbook. He then walked with her to the bank, staying right at her side the whole time. When they left the bank, the other man approached them and "one on each side, [they] walked [her] to their car.” Once inside, the defendant ordered her to "[c]ome on, give us the money” and she testified that she did so "[b]ecause I was afraid of him anyway. He demanded it, and you know, they are dangerous. What are you going to do?”
The defendant argues that the demand that the complainant pay the money "for [her] own safety” is not a threat of the immediate use of physical force and that the People have failed to establish this essential element of robbery. Here, however, we do not have to evaluate those words in a vacuum, but rather, it was proper for the trial court to allow the jury to interpret these words in light of the myriad facts and circumstances of this case, and it is within the province of the jury to determine the weight to be accorded the testimony (see People v Conroy, 34 NY2d 917, 919; People v White, 2 NY2d 220, app dsmd 353 US 969). It was for the jury to determine, under an appropriate charge, whether the defendant’s actions were a mere continuation of the original "con game” or whether the scheme had broken down and the defendant’s activities, taken in context and as a whole, constituted threats of the immediate use of physical force. In the instant case, there was ample evidence from which the jury could conclude *283 that the defendant had resorted to the use of threats of the immediate use of physical force to compel the complainant to part with her money.
To suggest that the threatening words, if any there be, must in and of themselves express the immediacy of the use of physical force is to graft an added and unjustified requirement onto the statute and to invade the jury’s domain as the fact finder. The statute does not require the use of any words whatsoever, but merely that there be a threat, whatever its nature, of the immediate use of physical force. It certainly should not be read so as to allow a criminal to go free on the mere happenstance that he did not employ what by hindsight a reviewing court would categorize as threatening words of art.
Finally, the defendant contends that the trial court committed reversible error in its charge to the jury with respect to the robbery count in that the court substituted the word "safety” for the word "force” in reading the jurors the statutory definition of robbery. Reading the charge as a whole, however, we find that the Judge accurately stated the law with respect to the elements of the crime of robbery (cf. People v Tanner, 30 NY2d 102, 107-108; People v Bloeth, 9 NY2d 211).
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Fuchsberg and Cooke concur.
Order affirmed.

 In dismissing the count charging grand larceny in the third degree, the trial court ruled: "That case will be dismissed, not because grand larceny was not established, but rather because of failure of pleading. The pleading should have been that grand larceny was committed by extortion, but because it wasn’t pleaded, and only because of that, I am granting the motion to dismiss that.” The dissenters at the Appellate Division argued that the trial court was in error in dismissing the larceny counts, noting that in their opinion the larceny involved was not by extortion, but rather a common-law larceny by trick or false pretenses and that the indictment sufficiently pleaded that crime. We need not reach the issue since it was not raised on this appeal.