■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HAROLD HUFFMAN, Appellant.—Judgment unanimously modified, on the law and facts, by reversing defendant's conviction for assault, second degree, under the third count of the indictment and vacating the sentence on that count, and otherwise judgment affirmed. Memorandum: Defendant appeals from a judgment entered upon a jury verdict of guilty on three counts of a six-count indictment. The charges arose out of a series of events occurring in the house of John Streb on the evening of August 3 to 4, 1974. As a result of a dispute, defendant was shot by Horace Livingston. Livingston, in turn, was shot and killed by defendant, and Streb and William Barry were shot by defendant. The indictment charged defendant with the murder of Livingston, attempted murder and assault, first degree (Streb), attempted murder and assault, first degree (Barry), and attempted murder of Willie Bryan who was also at the scene. The jury acquitted defendant of the murder of Livingston, accepting his theory of self-defense and acquitted him of the attempted murder of Streb and Bryan. He was convicted of assault, second degree, as to Streb and Barry and of the attempt to murder Barry. The evidence is sufficient to support the jury's verdict and there is no error in the charge. The judgment must be modified, however, by reversing the conviction on Count No. 3 of the indictment which charged defendant with the assault of Barry. That count of the indictment is dismissed and the sentence vacated because under the facts of this case assault, second degree, was a lesser inclusory concurrent offense of the count of attempted murder (see CPL 300.40, subd 3, par [b]). The testimony of the witnesses concerning the events of the evening differs substantially but the verdict is understandable if the following evidence is accepted as true. On the late evening of August 3, 1974 defendant and codefendant, Alvin Kelly, went to Streb's house. Streb, Bryan, Livingston and Richard Batten were in the living room and Barry, a tenant of Streb, was upstairs in his room asleep. After the men had been drinking and visiting on the first floor, Livingston, Streb and defendant apparently became involved in a dispute about some missing furniture belonging to defendant's wife and those three retired to an exotic room in Streb's attic known as the "love cave" to talk privately. Defendant claimed that the argument became more intense after they reached the attic and that the subject changed to a discussion of the narcotics traffic the three men had previously engaged in and the homosexual relationship that

had existed between Streb and defendant. Defendant told Livingston and Streb that he wanted no further part of either and when he tried to leave, Livingston pulled out a revolver and shot defendant in the arm. Defendant removed his own gun, killed Livingston and then shot Streb in the face. William Barry, who was sleeping on the second floor, was awakened by the noise and ran up the stairs to the attic. When defendant saw him, he warned Barry to stay away and when Barry moved forward, defendant fired at him three times. The first and third shots missed Barry. The second shot struck his hand. Defendant had no recollection of shooting Barry and claimed that he was struck on the head from behind after shooting at Streb. Apparently Streb and Barry subdued defendant because the witnesses agree that shortly thereafter Bryan and the codefendant, who had been in the living room, ran to the attic and ordered defendant released. Defendant picked up his gun and proceeded to point the gun at Bryan and Streb and in the general direction of Barry. He pulled the trigger as he aimed at each man but the gun was either empty or misfired. In any event, it did not fire. One of the participants yelled that the police were coming and defendant and codefendant ran out of the house. Barry testified that only a minute and a half to two minutes elapsed from the time he entered the attic until everyone left. The jury found defendant not guilty of any crime by the act of pointing the gun at Streb and Bryan and pulling the trigger without result. Consequently, it must have found him not guilty of any offense against Barry based upon the same allegations. Thus, the incident in which defendant fired three shots at Barry, one hitting him in the hand, must reasonably be the basis for the convictions of attempted murder and assault relating to Barry, and defendant could not have committed the crime of attempted murder by this incident without also having been guilty of assault, second degree, (People v Rosado, 53 AD2d 816; People v Kitt, 48 AD2d 793; cf. People v Tanner, 30 NY2d 102, 108). One might view the firings as separate acts and argue that since three shots were fired, the shot that hit Barry supports the assault conviction, while the two shots that missed him support the attempted murder conviction. It is clear from the evidence, however, that the three shots were fired in succession and were part of the same occurrence. It can hardly be contended that the second shot, which hit Barry, was fired with the intent to cause physical injury (Penal Law, § 120.05), while the first and third shots, which missed him, were fired with the intent to cause death (Penal Law, § 125.25). The three shots should be treated as a single incident and if they are, it was impossible for defendant to commit the crime of attempted murder by such conduct, without committing the crime of assault as well. The verdict of guilty of the attempted murder required dismissal of the assault charge relating to Barry and the indictment should be dismissed and the sentence vacated as to that count. Defendant did not waive his rights by failing to object to the court submitting both the counts of attempted murder and assault to the jury. Upon the evidence, the jury might have found attempted murder from the conduct of pointing the gun at Streb, Bryan and Barry without result and separate assaults upon Barry and Streb when defendant shot and injured them. It was only after the jury had resolved this widely divergent evidence and returned its verdict that the error in the verdict became apparent. (Appeal from judgment of Monroe County Court—attempted murder and assault, second degree.) Present—Moule, J. P., Cardamone, Simons, Hancock, Jr., and Denman, JJ.