■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LUIS SANCHEZ, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Owens, J.), rendered July 2, 1984, convicting him of murder in the second degree and attempted murder in the second degree, upon a jury verdict, and sentencing him to consecutive indeterminate terms of 25 years to life imprisonment on the murder count, and 8⅓ to 25 years' imprisonment on the attempted murder count.

Ordered that the judgment is affirmed.

The defendant stands convicted of the attempted murder of Sonia Heron, the daughter of his girlfriend Petra Maldonado, and the murder of Sonia's husband, James Heron. The crimes were the culmination of a family dispute which erupted from the continuing course of dissension between the defendant and the victims. The defendant had lived with Petra Maldonado in the attic apartment of a three-story house in Brooklyn which Petra owned. Sonia and James Heron and their two children Jamie and Nellie lived in the second-floor apartment of the same residence. The circumstances of the events in question are derived from the trial testimony of the two eyewitnesses, Jamie and Nellie. On the afternoon of May 21, 1983, Jamie, then 10 years old, Nellie, then 17 years old, and several of their friends were playing "whiffleball" in front of their home. The defendant told them not to play ball near his car which was parked in front of the house. The game continued, so the defendant took the ball. At that point, Sonia emerged from the house and confronted the defendant. She asked for the ball, which the defendant returned. Moments later, James Heron, the deceased, came out of the house. After a heated exchange, James punched the defendant several times, knocking him to the ground. The defendant got up and returned to the house. James, Sonia and the two children followed. While James, Nellie and Jamie went to their second-floor apartment, Sonia continued up the stairs toward the attic apartment. Moments later Petra cried "No, Louie, no". This exclamation was followed by the sound of a gunshot. Nellie, who was in the hallway, saw her mother tumbling down the stairs from the third floor. The defendant came down the stairs after Sonia, saw that she was still moving, and fired again while she lay on the floor.

The defendant continued past Nellie toward the second-floor apartment, as Nellie pleaded with him to stop shooting. Meanwhile, James attempted to close his apartment door. The defendant pushed against the door and then fired a shot through it striking James in the chest. James staggered backwards into the room and fell to the floor. The defendant entered the apartment and, as Nellie and Jamie looked on in horror, he shot James twice more. He immediately fled.

The police responding to the scene found Sonia semiconscious on the second-floor landing. She had suffered gunshot wounds to the chest and head. James was found lying faceup on the floor of the second-floor apartment. He was pronounced dead at the scene.

At the trial, defendant claimed that he was acting in self-

defense after James had attacked him in the attic apartment and slashed him with a knife. However, both Nellie and Jamie, as well as Petra, testified that James did not have a knife or anything else in his hand during the incident, nor did the police investigating the incident recover a knife. Moreover, the eyewitness testimony and the location of the body of the deceased belie the defendant's version of the events.

Initially, we find that the defendant was not deprived of a fair trial because the trial court precluded him from recalling his girlfriend as a witness to testify as to the deceased's reputation for violence and from recalling himself to testify that he was aware of that reputation. Through cross-examination of the People's witnesses, and the testimony of his own witnesses, the defendant presented extensive testimony as to two specific acts of violence that the deceased had committed against him, one of which occurred a short time before the shootings. This specific testimony of particular acts of violence committed against the defendant was clearly the strongest and most relevant evidence the defendant could have offered regarding his state of mind and his justification defense. Evidence of the deceased's general reputation would have been cumulative and would have had a de minimis effect on the outcome of the trial. Thus, any error with respect to the preclusion of the proposed testimony was harmless.

The defendant's further contention that the trial court erred by failing to instruct the jury that he had no duty to retreat from his dwelling (see, Penal Law § 35.15) was not preserved for our review (see, CPL 470.05 [2]). In any event, this charge omission does not warrant reversal in the interest of justice since the justification charge as given was not prejudicial to the defendant's position at the trial.

In reviewing the defendant's sentence, we must remain mindful of the customary refrain that a sentencing determination rests within the sound discretion of the trial court (see, People v Farrar, 52 NY2d 302, 305). However, we have the power pursuant to statute to, in the interest of justice, substitute our discretion for that of the trial court even if there has been no abuse of discretion (see, CPL 470.15 [3]; People v Suitte, 90 AD2d 80, 85-86). In the exercise of its discretion, a court is bound to give due consideration to all available facts, and to the four principal objectives of criminal sanctions— deterrence, rehabilitation, retribution and isolation (see, People v Suitte, supra, at 83; People v Notey, 72 AD2d 279, 282). The relative priority to be accorded each of these objectives depends upon the facts of each case, and one should not be

considered to the exclusion of the others. With due consideration given to those objectives, we conclude that the sentence imposed was not an improvident exercise of discretion but served to further the objectives of criminal punishment. Nor are we inclined, in view of the heinous and reprehensible nature of the crimes and the defendant's lack of remorse for his involvement therein, to substitute our discretion for that of the sentencing court.

The crimes here cry out for the full rigor of the sanctions permitted under the Penal Law. Despite the defendant's unblemished record, any modification of the sentence imposed, as urged by the defendant, would condone a particularly vicious attack which was out of all proportion to the conduct alleged to have incited it and would also render a grave disservice to the victims and their families. From the gunshot wound to her head, Sonia has been rendered a quadriplegic. Her face is slightly deformed and she speaks only with great difficulty. Sonia Heron will likely remain paralyzed and in an institution for the remainder of her life. Jamie and Nellie are essentially orphans. They not only have been deprived of the comfort and counsel of their parents but continue to suffer the emotional impact of having been eyewitnesses to these egregious events. Nellie's visits to her mother serve as a constant reminder of the devastation wrought by the defendant.

No error of law is evident in the sentence imposed upon which a modification of sentence could be premised. The imposition of consecutive sentences is legally permissible for crimes committed by disparate and separate acts (see, Penal Law § 70.25 [2]; *People v Underwood,* 52 NY2d 882; *People v Williams,* 120 AD2d 630). Although the death of James Heron and the attempted murder of Sonia Heron may be said to have occurred in the course of a single extended transaction, separate acts caused the death of one victim and the severe injuries of the other (see, *People v Brathwaite,* 63 NY2d 839; *People v Tanner,* 30 NY2d 102; *People v Medina,* 120 AD2d 749). Thus, no error of law being present, modification of the sentence must necessarily rest upon a determination that the sentences imposed were unduly harsh or excessive (see, CPL 470.15 [6] [b]; *People v Diaz,* 118 AD2d 651). Imposition of concurrent terms herein would grant the defendant a "twofer", i.e., essentially one term of imprisonment for the commission of two extremely reprehensible crimes. Under circumstances like those present at bar, we believe that such a lenient sanction would be highly inappropriate and unwarranted. It follows, therefore, that the imposition of consecutive

terms at bar is not unduly harsh or excessive. Accordingly, we decline to substitute our discretion for that of the sentencing court. Thompson, J. P., Niehoff, Lawrence and Kunzeman, JJ., concur.