■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL AGNELLO and JOSEPH LETO, Appellants.—Appeals (1) by the defendant Michael Agnello from a judgment of the Supreme Court, Queens County (Appelman, J.), rendered August 21, 1990, convicting him of criminal possession of stolen property in the fourth degree (two counts), illegal possession of a vehicle identification number, and criminal sale of a motor vehicle with a changed identification number, upon a jury verdict, and imposing sentence, and (2) by the defendant Joseph Leto from a judgment of the same court, rendered August 24, 1990, convicting him of criminal possession of stolen property in the fourth degree (two counts), illegal possession of a vehicle identification number, criminal sale of

a motor vehicle with a changed identification number, and criminal possession of stolen property in the fifth degree (three counts), upon a jury verdict, and imposing sentence.

Ordered that the judgments are affirmed, and the matters are remitted to the Supreme Court, Queens County, for further proceedings pursuant to CPL 460.50 (5).

The defendants stand convicted of charges arising from their ownership and operation of A & L Reliable Used Auto Parts of Jamaica (hereinafter A & L), a licensed New York State vehicle dismantler in Queens. As part of an undercover investigation of certain Queens vehicle dismantlers or auto salvage yards, commonly known as "chop shops", by the Auto Crime Division of the Organized Crime Control Bureau of the New York City Police Department, two undercover officers, Sergeant Joseph Guzzardo and Police Officer Gary Weisbecker, established an "auto rebuilding" concern in Whitestone, Queens, known as F & M Classics (hereinafter F & M). They conducted business with A & L from this establishment. Over the course of a year, the undercover officers consummated numerous transactions with the owners and operators of A & L, the defendants Michael Agnello and Joseph Leto, and the codefendants Michael DeLuca and Joseph Agnello, resulting in the purchase of a total of 12 automobile parts, six of which were determined to have been stolen.

The defendants' convictions of criminal possession of stolen property in the fourth degree (two counts), illegal possession of a vehicle identification number and. criminal sale of a motor vehicle with a changed identification number are the result of the purchase by the undercover officers of a "nose" and two doors for a Pontiac Bonneville from A & L in November 1988. The undercover officers' order for these parts was taken by the defendant Leto and filled within one day. The parts were personally delivered to F & M's premises by the defendant Agnello. It was later discovered that these parts were from an automobile which had been reported stolen, identified by the vehicle identification number (hereinafter VIN) located on a fender. The confidential VIN under the radiator support was cut out.

On appeal, the defendants claim that the People failed to adduce sufficient evidence of guilty knowledge, i.e., that the defendants knowingly possessed and sold stolen and tampered-with motor vehicle parts. In support of this contention, they rely upon the trial testimony of Michael DeLuca, who explained that A & L had acquired the parts in issue from another "junk yard" via a teletype system, and that a delivery

truck from this other yard stopped at A & L's yard only momentarily, without unloading the parts, as it was rerouted to F & M's premises by the defendant Agnello, who accompanied the driver in order to collect payment for the parts from the undercover officers.

Viewing the evidence in the light most favorable to the People (see, People v Contes, 60 NY2d 620), we find that it was legally sufficient to establish the element of knowledge beyond a reasonable doubt. Specifically, DeLuca's testimony was discredited by the People's proof that the delivery was not made at F & M until one and one-half hours after the defendant Leto informed Guzzardo that the nose had been delivered to A & L, it was actually the codefendant Joseph Agnello who drove the truck to F & M, accompanied by his brother, the defendant Michael Agnello, and the unmarked flatbed truck which delivered the parts to F & M had been newly acquired by Michael Agnello, as revealed by his tape-recorded statements of that date. There is no indication on the receipt relating to the transaction dealing with the Pontiac Bonneville parts of a teletype purchase. Moreover, circumstantial evidence supports the conclusion that the defendants were aware of the nature of the property. No inventory stock number was placed on the parts, no internal documentation of the purchase allegedly made from the other yard was completed at A & L, and the defendants knew that any parts sold to F & M would not undergo inspection by the New York State Department of Motor Vehicles, since the defendant Agnello had ascertained as much from the undercover officers at the time of delivery (see, People v Oakley, 95 AD2d 944). This evidence, when viewed in conjunction with DeLuca's admission that A & L made no inquiry as to the ownership of the parts purchased from the other yard, thereby activating the statutory presumption of guilty knowledge (Penal Law § 165.55 [2]), and DeLuca's tape-recorded acknowledgment that Michael Agnello sells stolen parts, is sufficient to establish the defendants' guilt beyond a reasonable doubt. Moreover, upon the exercise of our factual review power, we are satisfied that the jury's verdicts are not against the weight of the evidence (see, CPL 470.15 [5]).

The defendants' challenge to the court's instructions as to the statutory presumption of knowledge imposed on those who deal in property (see, Penal Law § 165.55 [2]) is meritless. The presumption was properly applied in this case, since it was established that the defendants were in the business of buying and selling auto parts and the evidence adduced at trial

revealed no defendant-initiated inquiries regarding the ownership of the property *(see, People v Isolano,* 121 AD2d 470). Moreover, contrary to the defendants' representation of the record, the court correctly informed the jury of the nature of the presumption, instructed that it was permissive in nature, explained that it could be rejected, and cautioned that it did not shift the burden of proof from the prosecution *(see,* 2 CJI[NY] PL 165.55 [2]; *People v Lewis,* 125 AD2d 918).

The defendants assert that the sentencing court improperly imposed terms of imprisonment for criminal sale of a motor vehicle with changed VIN to run consecutively to the terms of imprisonment imposed upon the possession counts, all of which relate to the Pontiac Bonneville parts. Inasmuch as the possessory offenses and the sale count constituted "successive separate acts," each having been committed with the requisite criminal intent *(see, People v Tanner,* 30 NY2d 102, 108; *People v Day,* 73 NY2d 208, 212), and the possessory crimes are not a material element of criminal sale of a motor vehicle with a changed identification number, consecutive terms of imprisonment were authorized. Moreover, while the court could have determined, within its sound discretion, to forebear imposition of consecutive terms and instead to impose concurrent terms of imprisonment, we perceive of no basis upon which to substitute our discretion for that of the sentencing court, in view of the circumstances of this case and the defendants' criminal background.

We have examined the defendants' remaining contentions and find them to be without merit. Thompson, J. P., Rosenblatt, Miller and Ritter, JJ., concur.