**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Pascal GRANDI, a/k/a Pierre Rene
Ricollet, Defendant-Appellant.**

**No. 505, Docket 32596.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 22, 1970.

Decided April 7, 1970.

James M. Sullivan, Jr., U. S. Atty. for Northern District of New York, for plaintiff-appellee.

Thomas W. Keegan, Albany, N.Y., for defendant-appellant.

Before MOORE, FRIENDLY and HAYS, Circuit Judges.

HAYS, Circuit Judge:

This is an appeal from a judgment of conviction entered against appellant in the United States District Court for the Northern District of New York upon a jury verdict finding him guilty of concealing unlawfully imported narcotics in violation of 21 U.S.C. §§ 173, 174 (1964). Appellant contends on appeal that the trial judge erred in denying pre-trial motions to dismiss the indictment, to suppress evidence obtained by government agents in their search and arrest of appellant and to suppress statements made by appellant prior to his arraignment. We find no error and affirm the conviction.

### I.

Appellant, a French citizen travelling as a passenger on board a train en route from Montreal, Canada to New York City, was arrested by United States customs officials at Rouses Point, New York, after an inspection of his baggage at the Customs Office revealed approximately six kilograms of hcroin hydrochloride concealed beneath a false bottom in his suitcase.

Appellant contends that he was unlawfully arrested in Canada, that he and his luggage were in the custody and under the control of a United States customs official at the time he entered the United States, and that therefore the indictment against him must be dismissed.

Paul Graveline, a United States Customs Inspector assigned to inspectional duties aboard the train on which appellant was travelling, conducted a preliminary inspection of appellant's luggage as the train approached the United

States. Noting a difference between the inside and outside dimensions of appellant's larger bag, Inspector Graveline, with a Canadian customs officer acting as an interpreter, questioned appellant concerning the disparity. Appellant replied that the bottom of the bag was reinforced by a piece of wood. Inspector Graveline attempted to push his fingers under the inside bottom of the suitcase, but was unable to do so. He then allowed appellant to replace his clothing in the suitcase, informed him that he would be subjected to further examination upon arrival at Rouses Point, New York and told him that he could be seated. Inspector Graveline took a seat across the aisle from the seat occupied by appellant. At various times during the remainder of the journey he was joined by the Canadian customs officer and by a United States immigration officer.

Before entering the United States, the train made a stop at Lacolle, Quebec, at which point the Canadian customs officials left the train. Crucial to appellant's contention that he was actually placed in custody before entering the United States is his claim that he attempted to get up from his seat and leave the train at this stop, but that Inspector Graveline motioned him to return to his seat. Inspector Graveline testified that appellant made no attempt to rise from his seat and leave the train. Upon arrival at Rouses Point, Inspector Graveline directed appellant to disembark from the train and, carrying appellant's larger bag, took him into the customs office.

 The trial judge chose to credit Inspector Graveline's testimony. Therefore, accepting as we must his version of the incident, see United States v. Vita, 294 F.2d 524, 528 (2d Cir. 1961), cert. denied, 369 U.S. 823, 82 S.Ct. 837, 7 L.Ed.2d 788 (1962); United States v. Caci, 401 F.2d 664, 670 (2d Cir. 1968), cert. denied, 394 U.S. 917, 89 S.Ct. 1180, 22 L.Ed.2d 450 (1969), cert. granted as to other defendants and vacated on other grounds sub nom. Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1164, 22 L.Ed.2d 297 (1969), we find no reason to disturb the trial judge's finding that although appellant was under surveillance before entering the United States, he was not placed in custody and arrested until after his arrival at Rouses Point.

"To constitute an arrest, there must be an actual or constructive seizure or detention of the person, performed with the intention to effect an arrest and so understood by the person detained." Jenkins v. United States, 161 F.2d 99, 101 (10th Cir. 1947).

 By taking a seat across the aisle from appellant so that he might maintain surveillance, Inspector Graveline did not restrain appellant's liberty of movement nor did he assert custody over appellant's person or luggage. See Terry v. Ohio, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Yam Sang Kwai v. Immigration and Naturalization Service, 133 U.S.App.D.C. 369, 411 F.2d 683, 686 cert. denied, 396 U.S. 877, 90 S.Ct. 148, 24 L.Ed.2d 135 (Oct. 20, 1969); cf. Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Nor did Inspector Graveline's inspection of appellant's luggage evidence any intent to place appellant in custody. See Hicks v. United States, 127 U.S.App.D.C. 209, 382 F.2d 158, 161 (1967); United States v. Vita, *supra* at 528. Appellant, however, contends that from this time on he considered himself to be under arrest. The impression conveyed to the person claiming to have been detained is of course a relevant factor to consider in determining whether he was in fact in custody. See Hicks v. United States, *supra* at 161–162; cf. United States v. Middleton, 344 F.2d 78, 81 (2d Cir. 1965). Nevertheless, we do not believe that Inspector Graveline's conduct, considered in the light of all the circumstances surrounding his preliminary inspection and continuing surveillance, can properly be held to have constituted an arrest.

Since we find that appellant was not in the power and custody of a United States customs official before entering the United States, we also reject appel-

lant's contention that the unlawful importation of narcotics was actually done under the direction of government officials.

## II.

■ Appellant also contends that the preliminary inspection conducted by Inspector Graveline was unauthorized and unlawful and that since the suspicions aroused by that inspection led to the discovery of the unlawfully imported narcotics, the narcotics should have been suppressed. We cannot accede to this contention.

Reasonably construed, 19 C.F.R. § 10.-19 (1969) authorizes the kind of preliminary inspection conducted by Inspector Graveline.[1] That regulation provides that customs declarations "may be made to a customs officer * * * on a train * * * en route to the United States on which such an officer is assigned for that purpose," 19 C.F.R. § 10.19(a), and contemplates that an examination of the declarant's baggage shall be made at the time of the declaration, 19 C.F.R. § 10.-19(d) and (e). The preliminary inspection is not a compulsory one, but merely a convenience to avoid delay. By acceding to Inspector Graveline's request that he open his bag and permit an examination of its contents, appellant consented to the inspection undertaken. The trial court so found, and under the circumstances we cannot say that the finding was clearly erroneous. See United States v. Page, 302 F.2d 81, 85–86 (9th Cir. 1962).

## III.

Finally, appellant contends that after his arrest at Rouses Point the customs officers failed to bring him before a United States Commissioner "without

unnecessary delay" as required by Rule 5(a), Fed.R. Crim.P., and that the statements made by him during this period prior to arraignment are thus inadmissible under Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957).

Upon his arrest at Rouses Point at approximately 10:30 on the morning of December 13, 1967, appellant was given the *Miranda* warnings and otherwise advised of his rights. While denying any knowledge of the heroin concealed beneath the false bottom of his suitcase, appellant agreed to cooperate with customs officials in apprehending his contact man, whom he was to meet by prearranged signal in Grand Central Station in New York City. Accompanied by customs agents appellant boarded a train shortly after 11 a. m. and arrived in New York City at approximately 6:30 p. m. Appellant remained in Grand Central Station under the surveillance of the customs agents until approximately 9 p. m. By then it was too late to bring appellant before a Commissioner, see United States v. Price, 345 F.2d 256, 262 (2d Cir.), cert. denied, 382 U.S. 949, 86 S.Ct. 404, 15 L. Ed.2d 357 (1965), and appellant was taken to the New York City customs office, where he was questioned about his contacts and arrangements both here and in France. The questioning lasted until approximately midnight, after which appellant was lodged overnight in the Federal House of Detention. In the morning appellant was apparently interrogated briefly again. At 1:30 that afternoon appellant was finally arraigned before a United States Commissioner.[2]

■ Although appellant was thus not brought before a Commissioner until approximately 27 hours after he was arrested, the record does not establish

---

1. Ample statutory authority for the promulgation of 19 C.F.R. § 10.19 (1939) is contained in 19 U.S.C. § 1498(a) (1964), which authorizes the Secretary of the Treasury "to prescribe rules and regulations for the declaration and entry of * * * (6) Articles carried on the person or contained in the baggage of a per-

son arriving in the United States * * *."

2. The government's brief places the time of arraignment at 10:30 a. m. The testimony of the customs agents clearly establishes, however, that arraignment did not occur until 1:30 p. m.

that arraignment was delayed for the purpose of subjecting appellant to interrogation in any attempt to elicit a confession. Compare United States v. Price, *supra* at 261–262 with United States v. Middleton, *supra* at 82–83. It is clear that the delay on December 13 was caused solely by appellant's voluntary cooperation in seeking the apprehension of his contact man; any delay on December 14 is immaterial since no statements elicited from appellant on that date were introduced at trial. See United States v. Vita, *supra* at 533. *Mallory* is therefore inapplicable, and the statements made by appellant prior to his arraignment were properly admitted into evidence.

Affirmed.