STATE OF CONNECTICUT *v.* MARK MOSCONE

HOUSE, C. J., COTTER, BOGDANSKI, LONGO and BARBER, Js.

Argued June 3—decision released August 31, 1976

*George N. Thim,* special public defender, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Walter D. Flanagan,* assistant state's attorney, for the appellee (state).

BARBER, J.  The defendant was charged with the crimes of rape in the first degree in violation of § 53a-72 (a) (1) of the General Statutes and deviate sexual intercourse in the first degree in violation of § 53a-75 (a) (1) of the General Statutes.  On a trial to a jury, he was found guilty of rape and not

guilty of deviate sexual intercourse. He has appealed from the judgment rendered, claiming the court erred in admitting into evidence the testimony of two police officers concerning incriminating statements made by the defendant. Our disposition of these claims renders unnecessary any consideration of his other numerous assignments of error.

A brief summary of the facts will serve to place the defendant's claims in context. On the night of March 6, 1974, the complaining witness, W,[1] was accosted by a man as she was walking home to her apartment in Danbury from a neighborhood grocery store. The man told W he had a gun, and he ordered her to walk along with him. He forced her down a river bank and under a bridge, where he sexually assaulted her and then forced her to go with him to an abandoned building where he again sexually assaulted her. W and her assailant were together for a period of three hours during which time she had ample opportunity to observe his appearance. At trial, W made an in-court identification of the defendant as her assailant. The defendant did not dispute the fact that W had been assaulted by someone, and the main issue at trial was the identity of the assailant. W testified that her assailant had been armed with a knife and that he had threatened her with it. The state offered the testimony of Captain Nelson Macedo of the Danbury police force who, over the defendant's objection, testified that on the night of his arrest the defendant, in response to a question by Macedo, had stated that he did not know where the knife was and that he (the defendant) had thrown it away.

---

[1] We follow the practice adopted in like cases of not revealing the identity of the victim. See *State* v. *Bennett*, 171 Conn. 47, 49 n.1, 368 A.2d 184.

During trial, the defendant made an oral motion to suppress testimony concerning his statement about the knife, claiming the statement had been obtained in circumstances which violated the rules set out in *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, and therefore was inadmissible. A hearing on the motion to suppress was held out of the presence of the jury.

Previous testimony at the trial had established that the defendant had been arrested at some time after 9 o'clock in the evening of March 8, 1974. At the hearing, Captain Macedo testified that he had been called to the Danbury police station shortly after midnight, two or three hours after the arrest. Upon arriving at the police station, Macedo was told by a police sergeant on duty that the defendant had already been advised of his *Miranda* rights. Before questioning the defendant, Macedo also advised the defendant of his rights and the defendant signed a card indicating that he had been so informed and understood those rights. Macedo asked the defendant, who was then seventeen years old, if he wanted to call his parents and the defendant replied that his mother would commit suicide if she learned of his arrest. The defendant did not tell Macedo that he wanted to see a lawyer. Macedo then asked the defendant about the knife, and he replied that he had thrown it away and did not know where it was.

The defendant presented no testimony at the hearing but relied instead upon the following disclosure made in response to a pretrial order: "After his arrest the defendant stated that he would not say anything *until he saw his lawyer.* When asked if he wanted to call his parents he

responded that if he called his mother she would commit suicide. When asked about the knife he had used he stated that he had thrown it away and further stated that he did not remember where he had thrown it. The State also is enclosing herewith a copy of a report of Sergeant Raymond Horn which contains an oral statement made by the defendant." (Emphasis added.) The defendant argues that, as revealed by this disclosure, he had requested an opportunity to meet with a lawyer before answering any questions and that he had made this request before being questioned by Captain Macedo. He contends that this request, in and of itself, should have been sufficient to prevent any further questioning until he had in fact consulted with a lawyer or had himself indicated a willingness to answer questions. He claims that the renewed questioning by Captain Macedo, even though preceded by a renewed warning of his rights, violated the procedures mandated by *Miranda* and the statement obtained as a result of this questioning was, therefore, inadmissible.

The state offered no evidence at the hearing to explain the statement in its disclosure that the defendant had requested to meet with a lawyer before answering questions. Nor did the state offer any evidence of what, if anything, occurred in the interval between the defendant's arrest and his questioning by Captain Macedo. Macedo testified that he had no personal knowledge of what happened before he arrived at the police station, and the prosecutor informed the court that he had not prepared the disclosure and knew nothing of the circumstances surrounding the defendant's request to speak with an attorney. The prosecutor ventured the opinion that the defendant may have

asked to speak with a lawyer after being questioned by Macedo. The court commented that the defendant had been advised of his rights before being questioned by Macedo and that his statements in response to that questioning were therefore admissible.

In *Miranda* (p. 479) the United States Supreme Court ruled that an individual who has been taken into custody or otherwise deprived of his freedom in any significant way "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." The defendant concedes that he was given the mandated warnings; his claim is that the police did not comply with his request to meet with a lawyer before answering their questions.

The *Miranda* decision also holds (p. 473) that "[o]nce warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. . . . If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent." The court held further

(p. 475) that "[i]f the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel."

We are not persuaded that the state has met its burden of showing that the defendant "knowingly and intelligently" waived his right to counsel. The evidence presented at the hearing on the motion to suppress merely shows that after several hours in police custody the defendant was willing to answer questions posed by Captain Macedo. The record indicates that the defendant at some point desired to speak with an attorney but there is no evidence that this request was ever honored by the authorities. Nor was any evidence presented which tended to prove that it was the defendant who indicated a willingness to answer questions. The present case, therefore, differs in a crucial manner from the situation presented in *State* v. *Cobbs,* 164 Conn. 402, 324 A.2d 234, cert. denied, 414 U.S. 861, 94 S. Ct. 77, 38 L. Ed. 2d 112; see *Cobbs* v. *Robinson,* 528 F.2d 1331, 1342 (2d Cir.), cert. denied, 424 U.S. 947, 96 S. Ct. 1419, 47 L. Ed. 2d 354, affirming a denial of federal habeas corpus relief in the same case. In *Cobbs,* the defendant was given a *Miranda* warning and asked to see an attorney before answering any questions. After making this request, he was not asked any questions and was permitted to use the telephone. He called his grandmother who came to the police station to speak with him. Only after speaking with his grandmother did he make a statement to the police. We ruled that the statement was admissible, even though the defendant

had not in fact spoken with an attorney, holding that "an accused who requests counsel may thereafter voluntarily waive his right to counsel *provided he has had in the interim a full opportunity to obtain counsel or to have an attorney appointed for him.* The police may conduct an interrogation when such a knowing, intelligent and voluntary election to proceed without an attorney has been manifested by the defendant." (Emphasis added.) *State* v. *Cobbs,* supra, 420. In *Cobbs,* the state presented ample evidence to support the trial court's conclusion that the defendant had effectively waived his right to counsel after a lengthy conversation with a relative. In the present case, however, although the state admitted that the defendant had requested an attorney, it presented no evidence concerning the circumstances which led to the claimed waiver of right to counsel.

The present case also differs in important respects from the facts of *Michigan* v. *Mosley,* 423 U.S. 96, 97–98, 96 S. Ct. 321, 46 L. Ed. 2d 313. In *Mosley,* the defendant had been arrested by the Detroit police in connection with a series of robberies. After being advised of his rights in accordance with *Miranda,* the defendant said he did not wish to answer any questions and the interrogation promptly ceased. The defendant did not, however, ask to meet with an attorney. Several hours later, the defendant was questioned by a different member of the Detroit police force concerning his involvement in a murder. Before this second round of questioning began, the defendant was again advised of his rights but he did not, at this time, indicate any desire to remain silent or to meet with counsel. During the course of this questioning, he gave a statement implicating himself in the murder.

As in the present case, there was no claim in *Mosley* that the procedure followed by the police in the second interrogation did not, in and of itself, "fully comply with the strictures of the *Miranda* opinion." Id., 98. The issue was whether the defendant's earlier refusal to answer questions prohibited the police from initiating the second round of questioning. The court concluded (p. 104) "that the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'" The court held that the facts presented in *Mosley* reveal that the defendant's right to cut off questioning was fully honored. The court noted (p. 101 n.7), however, that different procedures are involved when a defendant requests to see an attorney rather than simply deciding to remain silent and also noted (p. 104 n.10) that *Miranda* requires interrogation to cease until an attorney is present, if an attorney has been requested.

From the scanty amount of evidence presented to it both at trial and at the hearing on the motion to dismiss, the trial court could not have properly concluded that the defendant's constitutional right to consult with an attorney had been "scrupulously honored" following his arrest. On the record before it, the court erred in admitting the defendant's statement concerning the knife into evidence. Because the statement linking the defendant with a knife served to bolster W's in-court identification of the defendant as her assailant, and because the identification of the assailant was the only contested issue at trial, we cannot conclude that the erroneous admission of the statement was harmless. A new trial is therefore necessary despite

the abundance of properly admitted evidence which tended to prove the defendant's guilt. Cf. *State* v. *Acklin,* 171 Conn. 105, 116, 368 A.2d 212; *State* v. *Williams,* 170 Conn. 618, 636, 368 A.2d 140.

Of the remaining claims of error raised by the defendant, only one is likely to arise again during the course of a new trial. At trial, the state called Sergeant Raymond Horn of the Danbury police force who testified that on March 11, 1974, while transferring a group of prisoners, including the defendant, from the police station to the Circuit Court for arraignment he overheard the defendant say to his mother: "All this for fucking a girl." The defendant's objection that the admission of this statement into evidence would be "violative of his rights under the constitution, including the right of privacy," was overruled by the court. On appeal, new counsel predicates his argument against the admissibility of the statement on the principle articulated in *Massiah* v. *United States,* 377 U.S. 201, 84 S. Ct. 1199, 12 L. Ed. 2d 246, that statements made by a defendant to law enforcement officials in the absence of counsel, after he has been charged with a crime, are not admissible.

To support his contention that *Massiah* applies to spontaneous utterances by an accused, the defendant relies on the reversal of *State* v. *McLeod,* 1 Ohio St. 2d 60, 203 N.E.2d 349, by the United States Supreme Court in *McLeod* v. *Ohio,* 381 U.S. 356, 85 S. Ct. 1556, 14 L. Ed. 2d 682 (citing *Massiah* v. *United States,* supra). See also *State* v. *McLeod,* 173 Ohio St. 520, 184 N.E.2d 101, reversed, 378 U.S. 582, 84 S. Ct. 1922, 12 L. Ed. 2d 1037. In *McLeod,* the defendant, after indictment and before counsel was assigned, made an oral confession in the pres-

ence of a deputy sheriff and an assistant prosecuting attorney while riding around in the sheriff's automobile searching for the gun used in a holdup. The Ohio court held the confession voluntary and admissible and the United States Supreme Court reversed in a memorandum decision.

In *Miranda* v. *Arizona,* supra, 444, procedural safeguards to protect fifth amendment rights pertaining to custodial interrogation of a defendant were enunciated, "custodial interrogation" was defined as questioning initiated by law enforcement officers after a person had been taken into custody or otherwise deprived of his freedom in any significant way, and it was held that an accused may waive effectuation of the right to counsel, provided waiver is made voluntarily, knowingly and intelligently. In *State* v. *Darwin,* 161 Conn. 413, 428, 288 A.2d 422, we summarized constitutional requirements pertaining to statements by an accused in custody, as follows: "What seems to be required is that once charged with a crime, a defendant must know that any statements he might make can be used against him and that any time he chooses to make *a statement to a law enforcement official* he may have counsel present. Thus, a statement made by a defendant after he is charged with a crime is only admissible if his counsel is present, or if he knowingly and voluntarily waives his right to have counsel present." (Emphasis added.)

Of course, in this case the defendant was in custody but there was no interrogation, compulsion, or even conversation between the defendant and the police officer. "Voluntary statements of any kind, not in response to custodial interrogation, are not barred by the Fifth Amendment, nor has their

admissibility been affected by the *Miranda* decision or its progeny." *United States* v. *Sanchez,* 449 F.2d 204, 209 (5th Cir.); *United States* v. *Martin,* 511 F.2d 148, 151 (8th Cir.); see *People* v. *Moore,* 50 Ill. 2d 24, 276 N.E.2d 319; *Commonwealth* v. *Powell,* 459 Pa. 253, 328 A.2d 507; *Montgomery* v. *State,* 15 Md. App. 7, 29, 288 A.2d 628. The incriminating statement made by the defendant in this case was spontaneous and not the result of interrogation by anyone. Furthermore, it was made to the defendant's mother in the presence of others, and there was no conversation between the defendant and the police officer who happened to hear it. "[N]o Fourth or Fifth Amendment [U.S. Constitution] claim can prevail where . . . there exists no legitimate expectation of privacy and no semblance of governmental compulsion against the person of the accused." *Couch* v. *United States,* 409 U.S. 322, 336, 93 S. Ct. 611, 34 L. Ed. 2d 548. It follows that "private incriminating statements of an accused may be overheard and used in evidence, if they are not compelled at the time they were uttered." *Fisher* v. *United States,* 425 U.S. 391, 400, 96 S. Ct. 1569, 48 L. Ed. 2d 39. The trial court did not err in admitting the statement into evidence.

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion the other judges concurred.