State of Connecticut *v.* Anthony S. Derrico

Cotter, C. J., Loiselle, Bogdanski, Peters and Healey, Js.

152

Argued November 13, 1979—decision released June 10, 1980

*Maxwell Heiman*, special public defender, with whom was *William J. Tracy, Jr.*, for the appellant-appellee (defendant).

*Richard L. Shiffrin*, assistant state's attorney, with whom, on the brief, were *George D. Stoughton*, state's attorney, and *Robert M. Meyers*, chief assistant state's attorney, for the appellee-appellant (state).

PETERS, J. This case principally concerns the interrelated mandates of the state and federal constitutions that determine the admissibility of custodial confessions procured after a suspect was found at his home in the early hours of the morning

and then invited to police headquarters. The defendant, Anthony S. Derrico, was indicted and convicted, after trial to a jury, of the crime of felony murder, in violation of General Statutes §§ 53a-54c and 53a-54a (c), in connection with the shooting death of Anne H. Moore during the course of a robbery or attempted robbery on April 8, 1976, at the Howard Johnson's Motel in Rocky Hill. Before trial, the defendant moved to suppress two confessions made to police during a custodial investigation at police headquarters. Although the trial court, *Shea, J.,* at that time ordered one of the statements suppressed in light of the failure of the police to have given the defendant complete warnings as required by *Miranda* v. *Arizona,* 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), both statements were subsequently admitted into evidence, over objection, at trial. The defendant has appealed from the judgment rendered upon his conviction.

In his appeal, the defendant challenges (1) the admission into evidence of certain statements admitting culpability; (2) the refusal of the trial court to require that a record be made of the grand jury proceedings or to permit counsel to be present during the grand jury proceedings; and (3) the charge to the jury concerning the requirement of proof beyond a reasonable doubt.

## I

Because of its significance, we first address the defendant's claim that the two confessions obtained by the police at police headquarters were improperly admitted into evidence at trial. The pertinent factual circumstances, as they appear from the transcripts of the trial and from Derrico's motion to

suppress the confessions, supplemented by the trial court's memorandum of decision on the motion to suppress, are as follows: On June 3, 1976, incident to an arrest on an unrelated charge, Connecticut state police officers searched the defendant's car and located under the dashboard a .38 caliber handgun to which the defendant, after being advised of his full *Miranda* rights, admitted ownership. On June 18, 1976, at about 9:20 a.m., the state police received a ballistics report from the federal bureau of investigation linking the gun with the bullet recovered from the motel office where Anne H. Moore had been shot. On June 19, 1976, at about 6:15 a.m., acting solely on the basis of the ballistics report obtained nearly twenty-four hours earlier, Officer Massamura of the Rocky Hill police and Trooper Raposa of the Connecticut state police arrived, without an arrest warrant, at the defendant's West Hartford home where he lived with his father. They found the defendant and invited him to accompany them to the Hartford state police headquarters for questioning. He was not then told either that he was being arrested or that he was free to refuse to go to Hartford. The defendant did not object to accompanying the officers to the police station. While in the police car, en route to the Hartford state police barracks, the defendant was advised of two elements of the *Miranda* warnings: his rights to remain silent and to have counsel present during questioning. During the trip he was further advised that he would be free to leave if, upon arrival in Hartford, he chose not to speak.

Upon arrival at state police headquarters at about 6:45 a.m., the defendant was escorted into an interrogation room equipped with a recording machine.

The defendant was again told he was free to leave; was informed that his handgun had been identified as the murder weapon; and was questioned about the incident at Howard Johnson's. Incomplete *Miranda* warnings were given,[1] interrupted by the defendant's objection to the reading. Thereafter, at around 7:15 a.m., but before the defendant had been fully advised of or had formally waived his *Miranda* rights, the defendant admitted his involvement in the crime. This statement was unrecorded. The interview continued, and, at approximately 8:07 a.m., nearly one and one-half hours after Derrico's arrival at the police barracks, the tape recorder was turned on and the defendant was read the complete *Miranda* warnings.[2] The defendant refused to sign the waiver form provided by the police as to each element of the *Miranda* warning, and the tape recorder was turned off. The defendant subsequently agreed to give a statement and the recorder was reactivated. The defendant, show-

---

[1] It is not clear what elements of the *Miranda* warnings were read to Derrico at this point. At trial, Trooper Raposa testified: "After we discussed some of the information, I then attempted to read Mr. Derrico his *Miranda* warnings. I got, maybe, two or three lines into it, and he told me to stop, that he didn't want to be arrested. And I told him, just because I was reading him his warnings, that didn't mean that he was going to be arrested. And he started crying at one point, sobbing.

"I attempted to read him the warnings again, and the same thing, I got two or three lines out, and he told me to stop again. I think this occurred on three occasions. And, on the third occasion, as I was either three or four lines through the warnings, he then told me he was involved in the murder at Rocky Hill."

[2] At trial, Trooper Raposa testified that before the defendant "signed or initialed anything" he was read the following warning: "Warning: The constitution requires that I inform you of your rights. You have the right to remain silent. If you talk to any police officer, anything you say can and will be used against you in court. You have the right to consult with a lawyer before you are questioned and may have him with you during questioning. If you cannot afford a lawyer, one will be appointed for you, if you wish,

ing signs of being emotionally distraught, executed a waiver of his *Miranda* rights and confessed his role in the crime. While the defendant was in the process of making his statement, the tape recorder was turned off several times for unrecorded discussion. After the taping, the defendant, crying, crumpled the waiver form which was later found "all torn up" and which was produced at trial as several pieces of paper taped together.

The question of the admissibility of the two confessions, one obtained before and one after full reading of the *Miranda* warnings, was twice presented to the trial court. In a motion to suppress before the trial had begun, the first confession was ruled inadmissible. Nonetheless, at trial, both confessions were admitted into evidence over the timely objection of the defendant with exceptions duly noted. The record does not disclose why the trial court reversed its earlier ruling. Since the state, however, in its brief concedes the inadmissibility of the first confession, we need not consider anything other than the second confession at this time.

The defendant argues the inadmissibility of the second confession on a variety of constitutional grounds. In reliance on the protection against self-incrimination contained in the fifth amendment to the United States constitution and article first, § 8 of the Connecticut constitution, and his right to due

before any questioning. If you wish to answer questions, you have the right to stop answering at any time, if you wish, to talk to a lawyer and may have him with you during any further questioning." This language satisfies the requirements of *Miranda* v. *Arizona,* 384 U.S. 436, 444, 467–74, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). See *State* v. *Moscone,* 171 Conn. 500, 505, 370 A.2d 1030 (1976); *State* v. *Cobbs,* 164 Conn. 402, 416–19, 324 A.2d 234, cert. denied, 414 U.S. 861, 94 S. Ct. 77, 38 L. Ed. 2d 112 (1973); *State* v. *Benitez,* 157 Conn. 384, 388–91, 254 A.2d 564 (1969).

process of law under the fifth and fourteenth amendments to the United States constitution and article first, §§ 8 and 9 of the Connecticut constitution, the defendant maintains that the confession should have been excluded as involuntary. In reliance on the protection against unreasonable search and seizure contained in the fourth amendment to the United States constitution and article first, § 7 of the Connecticut constitution, the denial of which would violate his right to due process of law under the fifth and fourteenth amendments to the United States constitution and article first, §§ 8 and 9 of the Connecticut constitution, the defendant contends that the confession should have been excluded as the tainted fruit of an illegal arrest. It is clear under recent decisions of the United States Supreme Court that a confession that is found to be voluntary for purposes of the fifth amendment has met only a threshold requirement for fourth amendment analysis. With respect to the fourth amendment, the further test is whether there is so close a causal connection between an illegal arrest and a confession that the confession must be suppressed in order to deter similar police misconduct in the future and to protect the integrity of the courts. *Dunaway* v. *New York,* 442 U.S. 200, 218, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979); *Brown* v. *Illinois,* 422 U.S. 590, 600–603, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975); *Wong Sun* v. *United States,* 371 U.S. 471, 487–88, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). Since a finding of voluntariness would therefore not resolve the question of admissibility of the second confession, we turn first to an inquiry into its causal connection with an arrest.

The defendant's claim that the second confession should have been excluded as violative of the fourth

amendment to the United States constitution and article first, §§ 7 and 9 of the Connecticut constitution requires the determination of three subsidiary questions: (1) was the defendant arrested? (2) was the defendant's arrest illegal? and (3) was the confession causally related to the defendant's illegal arrest? Since we decide the first of these questions in the negative, we agree with the state that the confession was not wrongfully admitted.

The question whether the defendant was under arrest when he acceded to the request of the police officers to accompany them to police headquarters in Hartford is crucial to the defendant's fourth amendment claims. If the defendant voluntarily went to Hartford with the police, there was then no coercive police conduct to invoke the exclusionary rules of *Payton v. New York,* 445 U.S. 573, 586–90, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980), and *Dunaway v. New York,* 442 U.S. 200, 215–16, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979). The trial court, in its memorandum of decision denying the defendant's motion to suppress his confessions, concluded that the defendant agreed to come to state police headquarters in Hartford for questioning and was not expressly or impliedly in custody until the time, at police headquarters, when he was informed of the results of the tests on the gun. Although the question is a close one, we find that this conclusion was not in error.

"Precisely when an arrest occurs is a question of fact which depends on an evaluation of all the surrounding circumstances. *Sibron v. New York,* 392 U.S. 40, 67, 88 S. Ct. 1889, 20 L. Ed. 2d 917 [1968]; *Rios v. United States,* 364 U.S. 253, 261–262, 80 S. Ct. 1431, 4 L. Ed. 2d 1688 [1960]." *State v. Love,* 169 Conn. 596, 600, 363 A.2d 1035 (1975). In *United*

*States* v. *Grandi,* 424 F.2d 399 (2d Cir. 1970), the United States Court of Appeals quoted with approval (p. 401) the following language from *Jenkins* v. *United States,* 161 F.2d 99, 101 (10th Cir. 1947) : "To constitute an arrest, there must be an actual or constructive seizure or detention of the person, performed with the intention to effect an arrest and so understood by the person detained." Among the factors to be considered in deciding whether a person has been arrested are the nature of the offense under investigation, the nexus between the suspect's actions and the offense, the time and place of police intrusion, the degree of physical restraint imposed and the reasonable expectations of both the suspect and the arresting officers. See *Oregon* v. *Mathiason,* 429 U.S. 492, 495, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977); *United States* v. *Grandi,* supra; *Hicks* v. *United States,* 382 F.2d 158, 161 (D.C. Cir. 1967). The presence or absence of a formal declaration of arrest is not determinative. See *Dunaway* v. *New York,* supra, 2256; *Henry* v. *United States,* 361 U.S. 98, 103, 80 S. Ct. 168, 4 L. Ed. 2d 134 (1959); *United States* v. *Brunson,* 549 F.2d 348, 357 (5th Cir. 1977); *United States* v. *Jackson,* 533 F.2d 314, 316 (6th Cir. 1976). Although the subjective belief of the suspect also is not determinative; see, e.g., *United States* v. *Brunson,* supra, 358; *Commonwealth* v. *Meehan,* 377 Mass. 552, 558–59, 387 N.E.2d 527 (1979); whether the subject has reasonable grounds to believe that he is under arrest is a factor of special significance. *Bridges* v. *United States,* 392 A.2d 1053, 1056 (D.C. App. 1978), cert. denied, 440 U.S. 938, 99 S. Ct. 1286, 59 L. Ed. 2d 498; *People* v. *Ussery,* 24 Ill. App. 3d 864, 868, 321 N.E.2d 718 (1974). To protect the reasonable expectations of the subject, it is appropriate to require

the arresting officers to take reasonable steps to make reasonably clear to a person whom they invite to police headquarters that he is under no legal obligation to accompany them. See American Law Institute, Model Code of Pre-Arraignment Procedure, §§ 110.1 (3) and 120.5 (2) (Proposed Official Draft, 1975) ;[3] and see generally 2 LaFave, Search and Seizure: A Treatise on the Fourth Amendment (1978) § 5.1 (a).

The defendant, in his argument that he was in fact arrested at his home in West Hartford, points to four factors that the record incontrovertibly establishes: he was picked up at his home in the early hours of the morning; the officers then had reason to know that he was a strong suspect with regard to a serious crime; the officers did not expressly advise him of his right not to come until he was in the police car on its way to Hartford; the officers attempted to administer *Miranda* warnings in the car, as if he were then in custody. The state's

[3] Section 110.1 of the American Law Institute, Model Code of Pre-Arraignment Procedure entitled Requests for Cooperation by Law Enforcement Officers, states in pertinent part:

"(3) WARNING TO PERSONS ASKED TO APPEAR AT A POLICE STATION. If a law enforcement officer acting pursuant to this Section requests any person to come to or remain at a police station, prosecutor's office or other similar place, he shall take such steps as are reasonable under the circumstances to make clear that there is no legal obligation to comply with such request." An earlier version of this section, substantively virtually identical, was cited in *Dunaway* v. *New York*, 442 U.S. 200, 217, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979).

Section 120.5, entitled Circumstances Implying Arrest, states in pertinent part:

"(2) REQUESTS TO APPEAR AT POLICE STATION. If a law enforcement officer, pursuant to Section 110.1, requests any person to come to or remain at a police station, prosecutor's office, or other similar place, and does not take such steps as are reasonable under the circumstances to make clear that no legal obligation exists to comply with such request, such person shall be accorded all the rights and protections afforded to arrested persons by this Code."

argument to the contrary rests on the officers' testimony that they had no intent to arrest the defendant at his home, would have permitted him to remain at home, and repeatedly advised him of his right to leave before serious questioning was begun at Hartford police headquarters. The trial court was entitled to give credence to the testimony of the police; *State* v. *Mitchell,* 169 Conn. 161, 170, 362 A.2d 808 (1975); and to conclude, in light of all the circumstances, that the defendant was not legally obligated to accompany the police to Hartford and could not reasonably have understood the police invitation as an implied arrest.

Admissibility of the confession with respect to the defendant's claims under the fourth amendment to the United States constitution and article first, § 7 of the constitution of Connecticut does not resolve the defendant's claims under the fifth and fourteenth amendments to the United States constitution and article first, § 8 of the Connecticut constitution. The confession, although free from the taint of an illegal arrest, must still meet the test of voluntariness established by *Rogers* v. *Richmond,* 365 U.S. 534, 544, 81 S. Ct. 735, 5 L. Ed. 2d 760 (1961), and *Culombe* v. *Connecticut,* 367 U.S. 568, 602, 604, 605, 81 S. Ct. 1860, 6 L. Ed. 2d 1037 (1961). *State* v. *Staples,* 175 Conn. 398, 406–407, 399 A.2d 1269 (1978); *State* v. *Devine,* 149 Conn. 640, 653, 183 A.2d 612 (1962); cf. *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 223–27, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); see also *Miranda* v. *Arizona,* 384 U.S. 436, 444–45, 457–58, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); *Brown* v. *Mississippi,* 297 U.S. 278, 285–86, 56 S. Ct. 461, 80 L. Ed. 682 (1936). "Unless the state has, in a given case involving a particular accused, proved that under all the cir-

cumstances a particular confession by him was voluntary, that confession is inadmissible. The state is required to prove voluntariness as a prerequisite to the admissibility of a confession in any case." *State* v. *Vollhardt,* 157 Conn. 25, 34, 244 A.2d 601 (1968). In meeting that burden, the state need only prove voluntariness by a preponderance of the evidence, and need not satisfy the test of proof beyond a reasonable doubt. *Lego* v. *Twomey,* 404 U.S. 477, 489, 92 S. Ct. 619, 30 L. Ed. 2d 618 (1972); *State* v. *Staples,* 175 Conn. 398, 406–407, 399 A.2d 1269 (1978).

In this case the defendant raises four claims concerning admissibility: (1) was the second confession itself given voluntarily? (2) was the second confession tainted by an earlier inadmissible confession? (3) was the confession procured in violation of his right to counsel? and (4) was the confession obtained in violation of his right to remain silent? The defendant would have us resolve all of these claims in the affirmative; we do not agree.

The trial court found that the state had sustained its burden of proving that the defendant's taped confession was given voluntarily and was not the product of any threat, promise, or coercion; that the defendant fully understood his constitutional rights which were read to him by the officers just before the tape recording; and that he waived these rights knowingly and voluntarily as indicated on the tape and by his signature on the executed waiver form.

The issue of whether a confession is voluntary and admissible is, in the first instance, one of fact for determination by the trial court in the exercise of its legal discretion. *State* v. *Devine,* 149 Conn.

640, 652, 183 A.2d 612 (1962). That discretion must, however, be exercised in accordance with constitutional standards of due process. *State* v. *Staples,* 175 Conn. 398, 408, 399 A.2d 1269 (1978).

" '[T]he test of voluntariness is whether an examination of all the circumstances discloses that the conduct of "law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined . . . ." *Rogers* v. *Richmond,* 365 U.S. 534, 544, [81 S. Ct. 735, 5 L. Ed. 2d 760] (1961) . . . .' " *United States* v. *Nussen,* 531 F.2d 15, 21 (2d Cir. 1976); *State* v. *Staples,* supra, 408. "The ultimate test remains . . . . 'Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.' " *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 225, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973), quoting *Culombe* v. *Connecticut,* supra, 602; see *People* v. *Boerckel,* 68 Ill. App. 3d 103, 111, 385 N.E.2d 815 (1979), cert. denied, 447 U.S. 911, 100 S. Ct. 2998, 64 L. Ed. 2d 861 (1980).

We cannot say that, on the basis of the evidence before it, the trial court erred in concluding that the defendant had knowingly and voluntarily waived his *Miranda* rights and that consequently his taped confession was voluntarily given. The defendant's emotional state, his hesitancy to initial the official form waiving his *Miranda* rights, and his subsequent mutilation of the waiver form do not, in light of the other credible evidence before the court, compel the conclusion that his waiver was not

knowing, intelligent and voluntary, or that his confession was not "the product of an essentially free and unconstrained choice" and therefore coerced. *Culombe* v. *Connecticut,* supra, 602; *State* v. *Staples,* supra, 408. The entire transaction in the interrogation room occupied some eighty minutes. There was no evidence that the defendant requested an attorney or indicated a desire to terminate the interview. The defendant was provided with coffee. There was no indication that he was under the influence of alcohol or drugs, or that he was mentally or emotionally handicapped. Although there was police testimony that when the defendant indicated his unwillingness to sign the waiver form the tape recording was turned off and then reactivated when he executed the waiver and agreed to give a statement, the defendant does not claim on appeal that he was physically restrained or abused, that physical or psychological force was used upon him, or that any threats, promises, or offers were made. This case is therefore, on its facts, readily distinguishable from the overbearing circumstances of *Rogers* v. *Richmond,* supra, and *Culombe* v. *Connecticut,* supra. Cf. *State* v. *Staples,* supra, 400; *State* v. *Traub,* 150 Conn. 169, 176–77, 187 A.2d 230, vacated and remanded, 374 U.S. 493, 83 S. Ct. 1899, 10 L. Ed. 2d 1048 (1962), on remand, 151 Conn. 246, 196 A.2d 755, cert. denied, 377 U.S. 960, 84 S. Ct. 1637, 12 L. Ed. 2d 503 (1963) ; *State* v. *Devine,* 149 Conn. 640, 651–52, 183 A.2d 612 (1962).

The defendant contends that his reluctance to sign the *Miranda* waiver form manifested so clear an exercise of his right to remain silent as to invoke his fifth amendment privilege to cut off further questioning. *Michigan* v. *Mosley,* 423 U.S. 96, 104, 96 S. Ct. 321, 46 L. Ed. 2d 313 (1975), requires sup-

pression of statements obtained after a person in custody has decided to remain silent. In this case, however, any hesitation on the defendant's part was equally consistent with his distraught emotional state and did not necessarily signal that he was invoking his constitutional right to remain silent. A refusal to sign a waiver form is a relevant factor in determining whether an individual knowingly, intelligently, and voluntarily waived his privilege, but it is not a controlling one. *United States* v. *Cruz,* 603 F.2d 673, 675 (7th Cir. 1979), citing *North Carolina* v. *Butler,* 441 U.S. 369, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979). Contra, *Commonwealth* v. *Bussey,* 486 Pa. 221, 404 A.2d 1309 (1979).

On the basis of the record before us, we conclude that there was sufficient evidence before the trial court to sustain its conclusion that the defendant was advised of his constitutional rights, executed a valid waiver, and confessed voluntarily. Viewing the totality of the circumstances, we cannot say that the free will of the defendant was overborne. See *United States* v. *Washington,* 431 U.S. 181, 188, 97 S. Ct. 1814, 52 L. Ed. 2d 238 (1977).

Nor on our review of the record can we say that the trial court erroneously concluded that the defendant's taped confession was not tainted incurably by the prior unrecorded statement of involvement. The defendant argues that his confession should have been suppressed because he "let the cat out of the bag" by his earlier inculpatory statement, that his taped confession was the product of the earlier statement. We do not agree.

As we stated in *State* v. *Rosa,* 170 Conn. 417, 425n., 365 A.2d 1135, cert. denied, 429 U.S. 845, 97 S. Ct. 126, 50 L. Ed. 2d 116 (1976), "where the prose-

cution seeks to use a confession . . . uttered after an earlier one not found to be voluntary, [it] has the burden of proving that the second confession was not a product of improper threats or coercion and that it was not directly produced by the existence of the earlier confession." *Darwin* v. *Connecticut,* 391 U.S. 346, 350–51, 88 S. Ct. 1488, 20 L. Ed. 2d 630 (1968) (Harlan, J., concurring in part and dissenting in part). See *United States* v. *Bayer,* 331 U.S. 532, 540–41, 67 S. Ct. 1394, 91 L. Ed. 1654 (1947); *State* v. *Darwin,* 161 Conn. 413, 425, 288 A.2d 422 (1971). Not every confession that follows an invalid admission of criminal involvement is a tainted product of the earlier statement. *United States* v. *Bayer,* supra, 539–41; *State* v. *Darwin,* supra, 425. Whether the second confession is a result of the prior confession and therefore inadmissible is to be determined "in view of the totality of the circumstances, considering especially whether there was a break in the stream of events between the two statements." *Darwin* v. *Connecticut,* supra, 350–51; *Clewis* v. *Texas,* 386 U.S. 707, 710, 87 S. Ct. 1338, 18 L. Ed. 2d 423 (1967); *Tanner* v. *Vincent,* 541 F.2d 932, 936 (2d Cir. 1976), cert. denied, 429 U.S. 1065, 97 S. Ct. 794, 50 L. Ed. 2d 782 (1977).

Two factors are of primary importance in assessing the voluntariness of a subsequent statement: (1) the lapse of time between the invalid confession and the later statement and (2) whether the confessor has been confined during that period. *State* v. *Darwin,* supra, 425–26. These factors do not, however, provide a categorical answer to the ultimate question of voluntariness, which requires examination of the totality of the relevant facts. As the court stated in *Tanner* v. *Vincent,* supra, 937, if the defendant did let the cat out of the bag, "this

was only one factor bearing on the disputed issue of the voluntariness of the later, fully advised statement."

The impact of the defendant's prior indication of involvement was a fact among others to be considered by the trial court in determining whether the defendant's taped confession was a voluntary utterance; it did not conclude the issue. The first "confession" was only a general acknowledgment of involvement in the crime, whereas the second confession was detailed. The failure of the police immediately to inform the defendant of his complete *Miranda* rights was the result of the defendant's own objections and resistance. The trial court could reasonably have viewed as less pernicious a prior statement whose inadmissibility was premised on the failure of the police to fulfill completely the prophylactic requirements of *Miranda* v. *Arizona,* than a statement involuntarily extracted by coercion. *Michigan* v. *Tucker,* 417 U.S. 433, 443–48, 94 S. Ct. 2357, 41 L. Ed. 2d 182 (1974); *Tanner* v. *Vincent,* supra, 936–37; *United States* v. *Lewis,* 425 F. Sup. 1166, 1178 (D. Conn. 1977); see *United States* v. *Davis,* 527 F.2d 1110, 1111 (9th Cir. 1975).

The defendant additionally urges suppression of the confession under the sixth amendment to the United States constitution and article first, § 8 of the constitution of Connecticut on the ground that he was denied the right to counsel. The defendant claims that he was represented by counsel appointed on an unrelated matter, that this fact was known to the police, and that he did not knowingly, intelligently and voluntarily waive his right to that counsel.

A statement made by a defendant during the course of a custodial interrogation is ordinarily admissible into evidence only if his counsel is present or if he knowingly, intelligently and voluntarily waives his right to counsel. *State* v. *Moscone,* 171 Conn. 500, 510, 370 A.2d 1030 (1976); *State* v. *Darwin,* 161 Conn. 413, 428, 288 A.2d 422 (1971), citing *Miranda* v. *Arizona,* supra; see also *State* v. *McLucas,* 172 Conn. 542, 551, 375 A.2d 1014, cert. denied, 434 U.S. 855, 98 S. Ct. 174, 54 L. Ed. 2d 126 (1977). We do not agree that, under the circumstances of this case, the state was required to cease questioning of the defendant. The defendant never requested that his counsel be present. The state does not contest that the police have an affirmative duty, under *Miranda* v. *Arizona,* to stop interrogating a suspect when his counsel has entered an appearance. See *People* v. *Grant,* 45 N.Y.2d 366, 372, 380 N.E.2d 257 (1978). The fact that the defendant had been represented by counsel in a different proceeding did not, however, give notice to the police that an appearance had been entered by the defendant's counsel in connection with the charges then under investigation. See *People* v. *Taylor,* 27 N.Y.2d 327, 329–30, 266 N.E.2d 630 (1971); *People* v. *Hetherington,* 27 N.Y.2d 242, 265 N.E.2d 530 (1970); see also *State* v. *McLucas,* supra, 550. The defendant's arraignment in the prior matter was genuinely unrelated and neither a sham nor a pretext for investigation of the robbery-murder at the Rocky Hill Howard Johnson's Motel. The police were entitled to proceed with the interrogation upon receiving the defendant's valid waiver of his *Miranda* rights. *People* v. *Taylor,* supra, 330; *People* v. *Chen,* 37 Cal. App. 3d 1046, 1048, 112 Cal. Rptr. 894 (1974). The trial court was

therefore not in error in admitting the defendant's detailed confession into evidence on the ground of denial of counsel.

The defendant's remaining claim with regard to the admissibility of his confession is that he was not informed of his right to stop answering questions at any time. The operative language in *Miranda* v. *Arizona* on which the defendant relies states: "Once warnings have been given the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda* v. *Arizona,* 384 U.S. 436, 473, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). As we indicated in *State* v. *Cobbs,* 164 Conn. 402, 418–19, 324 A.2d 234, cert. denied, 414 U.S. 861, 94 S. Ct. 77, 38 L. Ed. 2d 112 (1973), *Miranda* does not literally require that such a statement be included in the warning given. The burden is on the defendant independently to assert his desire to remain silent. His request that interrogation be terminated must be honored; *People* v. *Grant,* supra, 373; but he need not expressly be advised of his right to make the request.

In summary, our examination of the various arguments raised concerning the admissibility of the second confession as the defendant's voluntary act persuades us that the trial court's conclusion permitting its introduction into evidence was not in error.

## II

The defendant's claims as to impropriety in the grand jury proceedings arise out of motions filed, after his arrest, with regard to the then forthcoming grand jury concerning his possible indictment. He

asked that a stenographic record and transcript be made, and that he be permitted to be accompanied by counsel at the grand jury proceedings. Both motions were denied, and these rulings have been assigned as errors upon this appeal. In light of our recent opinion in *State* v. *Piskorski,* 177 Conn. 677, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979), it is clear that the presiding judge, *Alexander, J.,* was correct in denying the relief sought.

## III

The defendant's final claim charges that the trial court, *D. Shea, J.,* erred in instructing the jury with respect to the doctrine of the requirement of proof beyond a reasonable doubt. The defendant focuses upon that part of the charge in which the court defined a reasonable doubt as "one for which you can, in your own mind, conscientiously give a reason." The defendant contends that this charge, to which timely exception was taken, improperly lessened the state's burden of having to prove guilt beyond a reasonable doubt, and erroneously cast upon the defendant the burden of furnishing reasons for acquittal, and hence violated the defendant's right to due process of law under the fifth and fourteenth amendments to the United States constitution and article first, §§ 8 and 9 of the Connecticut constitution. See *Mullaney* v. *Wilbur,* 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975); *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). We do not agree.

As we have often stated, the test to be applied to any part of a charge is whether the charge as a whole presents the case to the jury so that no injustice will be done. *State* v. *Piskorski,* supra, 746;

*State* v. *Mastropetre,* 175 Conn. 512, 524, 400 A.2d 276 (1978) ; *State* v. *Roy,* 173 Conn. 35, 40, 376 A.2d 391 (1977) ; *State* v. *Mullings,* 166 Conn. 268, 275, 348 A.2d 645 (1974). A charge to the jury is not to be "critically dissected" nor are individual instructions to be judged in "artificial isolation" from the overall charge. *State* v. *Reed,* 174 Conn. 287, 305, 386 A.2d 243 (1978). The issue is whether, in view of the charge read as a whole, that portion of the charge to which objection has been taken can be considered a basis for finding harmful error.

The instruction essentially defined a reasonable doubt as a doubt founded on reason as contrasted with a purely speculative doubt.[4] See *United States* v. *Cruz,* 603 F.2d 673, 675 (7th Cir. 1979). The portion of the charge relating to the concept of reasonable doubt, taken as a whole, was proper and sufficient guidance for the jury, and fairly presented the case to the jury so that no injustice resulted. *State* v. *Piskorski,* supra; *State* v. *Reed,* supra; *State* v. *Roy,* 173 Conn. 35, 40, 376 A.2d 391 (1977). The instruction was therefore without error.

There is no error.

In this opinion the other judges concurred.

---

[4] On the question of what is meant by a reasonable doubt, the court charged the jury as follows: "A reasonable doubt is not such a doubt as may be raised by one questioning for the sake of raising a doubt. It is not a surmise or a guess or a conjecture. It is not hesitation springing from feelings of sympathy or pity for the accused or members of his family or other persons who might in any way be affected by your verdict. A reasonable doubt is one founded upon the evidence; one which grows out of the evidence or the lack of evidence in the case. It is one for which you can, in your own mind, conscientiously give a reason. A reasonable doubt is a square and honest doubt, grounded on reason; one which appeals to reason. If the facts you may find proven can reasonably be explained in any other way than that the accused is guilty, you must, of course, render your verdict in his favor."